## TIMES-PICAYUNE PUBLISHING CORP.
## *v.* SCHULINGKAMP

No. A–1305.   Decided July 29, 1974

MR. JUSTICE POWELL, Circuit Justice.

This is an application for stay of an order of the Louisiana Criminal District Court for the Parish of Orleans restricting media coverage of the trials of two defendants accused of committing a highly publicized rape and murder in the city of New Orleans.   The applicant, a Louisiana corporation that owns and publishes two of the city's daily newspapers, has asked that I stay that order pending filing and disposition of a petition for a writ of certiorari in this Court.   Respondent, the Honorable Oliver P. Schulingkamp, has at my request filed a memorandum in opposition to the application.   The record before me indicates a substantial possibility that the state court's order is inconsistent with this Court's decisions governing prior restraint of the news media and that continuance of the order pending consideration of a petition for a writ

1301

of certiorari would inflict irreparable harm. I therefore have granted the requested stay.

In April 1973, a young white nursing student was raped and murdered following her visit to an elderly patient living in one of the city's public housing projects. Shortly thereafter, two Negro suspects were arrested and charged with the crime. The case immediately became the focal point in the media for a number of more generalized concerns. The state university program that prompted the student's unescorted visit to the housing project was called into sharp question, as was the sufficiency of law enforcement efforts in high-crime areas of New Orleans. The case also occasioned criticism of the criminal and juvenile justice systems.

Much of the initial publicity was directed toward one defendant, a 17-year-old with an apparently extensive history of juvenile offenses. Newspaper stories recounted in some detail the circumstances leading to his arrest and his subsequent alleged disclosure of the location where the victim's body was recovered. Additionally, stories dwelt on his prior juvenile offenses. Almost all of the many newspaper references characterized him as a youth with a history of 43 juvenile arrests, the accuracy of which has since been disputed. Some newspaper accounts referred to his previous arrest on charges of murder and armed robbery without simultaneously revealing that those charges had been dropped for insufficient evidence. Others reported a psychiatric diagnosis of this defendant made several years earlier and apparently contained in the records of the juvenile probation officer.

Within a few days reports concerning the crime, the accused, and other related concerns ceased to be of banner importance. Stories became shorter and began to move from the first page to less prominent positions in the papers. Newspaper coverage appears to have ceased

within some 10 days of the arrest and the papers apparently published no stories about the defendants from the latter part of April until late January of the following year, when one subdued story announced the anticipated initiation of pretrial motions in the case.[1]

Some of the newspaper reporting that occurred in April can hardly be characterized as responsible journalism. Like many States, Louisiana maintains the confidentiality of the records of juvenile offenders.   La. Rev. Stat. Ann. § 13:1586.3 (Supp. 1974).   The record does not indicate how reporters came into possession of some of their information.   Additionally, there appear to be inaccuracies or partial truths in matters that are of obvious importance.

[1] Stories from the applicant's newspapers were included in the defendant's motion to restrict media coverage and have been made part of this application.   They reveal that the crime obtained immediate first-page banner coverage.   On April 10, 1973, stories appeared that reported discovery of the victim's body and the arrest of a juvenile in connection with the crime.   By the next day, this defendant had been identified and front-page stories began to portray his history of juvenile arrests.   The arrest of the second defendant received banner coverage on April 12, as did a report that allegedly linked property stolen from the victim to the possession of the first defendant.   The following day first-page banner stories appeared purportedly detailing the first defendant's juvenile record and his psychiatric diagnosis.   One newspaper also ran a picture of him being escorted to arraignment with his hands cuffed behind his back.   During that same period other stories dealt with more general topics, and many mentioned this defendant and his juvenile record.

Publicity began to subside around April 15 and ended a few days thereafter.   The record does not disclose any subsequent newspaper accounts mentioning the defendants until the appearance on January 12, 1974, of a story reporting the expected initiation of routine pretrial motions in the case.

The record does not specifically reveal the nature and extent of radio and television reporting.   I assume that its timing and intensity more or less paralleled that of the newspaper reporting.

In March 1974, some 11 months after the crime and attendant extensive publicity, counsel for the defendant who had received the most journalistic attention moved that the Criminal District Court for the Parish of Orleans impose restrictions on reporting of the case. The court granted the motion on June 17, 1974. The court's order imposes a total ban on reporting of testimony given in hearings on pretrial motions until after the selection of a jury and also places other selective restrictions on reporting before and during trial.

At the time the order was issued, the court apparently contemplated only one trial. By its terms the order was to remain in effect until termination of *the* trial. The court later severed the defendants' cases and ordered separate trials of the rape and murder charges against each. It made no modification of its media coverage order to reflect this changed circumstance. The applicant has represented that the court stated that the order would remain in effect until the termination of the last trial. Respondent has not contradicted this representation, and I assume it to be correct.

The applicant sought relief from both the lower federal courts and the state court system prior to addressing this application to me. After failing to obtain immediate injunctive relief from the federal courts,[2] the applicant asked the state court to vacate its order. That request was denied, as was a request that the court stay its order pending submission of application for

---

[2] The United States District Court conducted a hearing at which it heard argument of counsel and the testimony of the respondent herein. Thereafter, the court determined that it should abstain from interfering with the state proceedings at that stage. The applicant noted an appeal from that decision and requested that the United States Court of Appeals for the Fifth Circuit stay the state court order pending appeal. A panel of the Fifth Circuit denied the request for a stay. Neither of these decisions is before me today.

supervisory and remedial writs in the Louisiana Supreme Court. On July 9, 1974, the applicant sought writs of certiorari, review, prohibition, and mandamus, and a stay of the state trial court's order in the Louisiana Supreme Court. That same day the Louisiana Supreme Court denied relief by a vote of four to three, stating that the "[s]howing made does not justify the relief demanded." Following one more unsuccessful attempt to obtain an injunction in the United States District Court, the applicant has requested that I, as Circuit Justice for the Fifth Circuit, stay the state court's order pending this Court's consideration of a petition for a writ of certiorari.

I have previously expressed my reluctance, in considering in-chambers stay applications, to substitute my view for that of other courts that are closer to the relevant factual considerations that so often are critical to the proper resolution of these questions. *Graves* v. *Barnes,* 405 U. S. 1201, 1203 (1972). In my in-chambers opinion in that case, I articulated the general standards governing the grant of a stay application: there must be a reasonable probability that four members of the Court would consider the underlying issue sufficiently meritorious for the grant of certiorari or the notation of probable jurisdiction; there must be a significant possibility of reversal of the lower court's decision; and there must be a likelihood that irreparable harm will result if that decision is not stayed. *Ibid.*

The question of the possibility of irreparable harm is particularly troublesome in this case. It presents a fundamental confrontation between the competing values of free press and fair trial, with significant public and private interests balanced on both sides. If the order is not stayed, the press is subjected to substantial prior restraint with respect to a case of widespread concern in the community. If, on the other hand, the order is stayed and

the press fails to act with scrupulous responsibility, the defendants' constitutional right to a fair trial may be seriously endangered.

The challenged portions of the order of the Criminal District Court for the Parish of Orleans impose a total prohibition on publication of testimony adduced in pretrial hearings until after selection of a jury. Noting that extensive testimony would be required in considering the many pretrial motions, including motions to suppress an alleged confession and other evidence, the court specifically ordered "that the reporting of such testimony be deferred until after the jury has been selected in order to preclude the possibility of such testimony influencing, in any way, prospective jurors yet to be selected, and rendering more difficult the task of selecting said jurors." In addition, the state court order imposes other selective restrictions on what may be published both before and during trial. These restrictions are aimed at the content of news reporting. The order requires that the media avoid publication of interviews with subpoenaed witnesses. It also prohibits publication of any of the defendants' criminal records or discreditable acts or of any possible confessions or inculpatory statements unless made part of the evidence in the court record. The order forbids publication of any testimony stricken by the court unless identified as having been stricken and bars publication of any leaks, statements, or conclusions of guilt or innocence that might be expressed or implied by statements of the police, prosecuting attorneys, or defense counsel. Finally, the order prohibits any editorial comment preceding or during trial "which tends to influence the Court, jury, or witnesses." By its terms, the order remains in effect "until the conclusion of the trial." The court's decision to continue the order during pendency of all of the trials ensures that it will

extend over an indefinite and possibly lengthy period of time.

The court's order imposes significant prior restraints on media publication. As such, it would come to this Court " 'bearing a heavy presumption against its constitutional validity.' " *New York Times Co.* v. *United States,* 403 U. S. 713, 714 (1971); *Organization for a Better Austin* v. *Keefe,* 402 U. S. 415, 419 (1971); *Bantam Books, Inc.* v. *Sullivan,* 372 U. S. 58, 70 (1963); *Near* v. *Minnesota ex rel. Olson,* 283 U. S. 697 (1931). Decisions of this Court repeatedly have recognized that trials are public events. See, *e. g., Sheppard* v. *Maxwell,* 384 U. S. 333, 349–350 (1966); *Estes* v. *Texas,* 381 U. S. 532, 541 (1965); *Craig* v. *Harney,* 331 U. S. 367, 374 (1947). And "reporters . . . are plainly free to report whatever occurs in open court through their respective media." *Estes* v. *Texas, supra,* at 541–542.

This Court also has shown a special solicitude for preserving fairness in a criminal trial. "Legal trials are not like elections, to be won through the use of the meeting-hall, the radio, and the newspaper." *Bridges* v. *California,* 314 U. S. 252, 271 (1941). See also *Rideau* v. *Louisiana,* 373 U. S. 723, 726 (1963); *Irvin* v. *Dowd,* 366 U. S. 717 (1961). The task of reconciling First Amendment rights with the defendant's right to a fair trial before an impartial jury is not an easy one. This Court has observed in dictum that newsmen might be prohibited from publishing information about trials if such restrictions were necessary to assure a defendant a fair trial. *Branzburg* v. *Hayes,* 408 U. S. 665, 685 (1972). There was no indication in that opinion, however, that the standards for determining the propriety of resort to such action would materially differ from those applied in other decisions involving prior restraints of speech and publication.

I need only consider this question in the limited context of an application for a stay. On the record before me, and certainly in the absence of any showing of an imminent threat to fair trial, I cannot say that the order of the state court would withstand the limitations that this Court has applied in determining the propriety of prior restraints on publication. Cf. *United States* v. *Dickinson*, 465 F. 2d 496 (CA5 1972). The state court was properly concerned that the type of news coverage described above might be resumed and might threaten the defendants' rights to a fair trial. But the restraints it has imposed are both pervasive and of uncertain duration. They include limitations on the timing as well as the content of media publication, cf. *Miami Herald Publishing Co.* v. *Tornillo*, 418 U. S. 241 (1974). Moreover, the court has available alternative means for protecting the defendants' rights to a fair trial.[3]

---

[3] The court has already invoked several of these procedures. For example, portions of the court's order prohibit members of the bar and other persons under the court's supervision and control from making extrajudicial statements prior to the termination of trial. These prohibitions are not challenged here. Additionally, respondent has indicated his intention to sequester the juries. This will protect against many of the hazards that the selective restrictions on reporting during trial are designed to prevent.

Some other options may yet be used to protect the defendants' rights. The defendant who sought the order apparently did not request that the pretrial hearings be closed to the public and press, and the court does not seem to have contemplated that possibility. As an initial matter, the court's power to take such action is a question governed by state law. Unlike some States, Louisiana does not appear to have a specific provision authorizing such action. Cf. Cal. Penal Code § 868 (1970); Iowa Code § 761.13 (1973); Mont. Rev. Codes Ann. § 95–1202 (c) (1969). This Court has not been called upon to determine whether these provisions are constitutional, and I express no view on that question. Of course, the court must conduct *voir dire* of the prospective jurors in these cases with particular care. Finally, the court retains the power to hold

The issues underlying this case are important and difficult. Without anticipating my views on the merits, I have concluded that this application satisfies the standards for the grant of a stay. Accordingly, I have decided to stay that portion of the order of the Louisiana Criminal District Court that imposes direct limitations on media reporting pending the timely filing and disposition of a petition for a writ of certiorari in this Court.[4]

---

persons, including members of the media, in contempt in particular limited circumstances. See *Craig* v. *Harney*, 331 U. S. 367 (1947); *Pennekamp* v. *Florida*, 328 U. S. 331 (1946); *Bridges* v. *California*, 314 U. S. 252 (1941).

[4] The applicant has not questioned the portions of the court's order that relate to the conduct of other persons, and this stay order does not affect them. My order is limited to the portion of the respondent's order directed specifically to the news media. It does not, however, stay the portion of the court's order prohibiting the use of electronic or mechanical equipment within the court during the trial or related proceedings.

The Reporters Committee for Freedom of the Press and the Vieux Carre Courier Publishing Co., as *amici curiae*, have requested additionally that I enjoin any court proceeding about which the press is prohibited from reporting pending final disposition of this case on the merits. I find that action to be unwarranted and unwise.