Donald J. Mark, J.
This proceeding originated as a motion pursuant to CPL 710.20 (subd 3) to suppress an alleged statement of the defendant. However, prior to the commencement of the pretrial hearing on this issue, the defendant applied for an order restraining the media from publishing any information concerning such hearing. This application was denied based upon Matter of New York Times Co. v Starkey (51 AD2d 60), which prohibited an ex parte order of this nature.
The defendant then complied with the mandate of Matter of New York Times Co. v Starkey (supra), and United States v Dickinson (465 F2d 496) and the guidelines recommended by the Legal Advisory Committee on Fair Trial and Free Press (62 ABAJ 63), standard 3.3 of which was adopted by the United States Supreme Court in Nebraska Press Assn. v Stuart (cert granted 423 US 1027).
Pursuant to this court’s direction, the defendant served written notice of his application for a restraining order upon the two daily newspapers and the four television channels of this city. The media appeared on the return date and both sides argued their respective positions. This was probably the first time in the history of this State that this procedure was followed.
The defendant’s application requested the court to: (1) enjoin the media from publishing the alleged statement of the defendant which is the subject of the pretrial hearing; (2) enjoin the media from publishing any derogatory term describing the defendant such as referring to his association with the "Mafia,” "Costra Nostra,’’ "organized crime” or "mob”; and (3) conduct the pretrial hearing in a courtroom closed to the media and the public (this last request being an oral amendment to the written application).
The specific constitutional issue of fair trial versus free press involved in this case has not yet been determined by *429 either the Supreme Court of the United States or the Court of Appeals. The United States Supreme Court granted certiorari in an almost identical case, Nebraska Press Assn. v Stuart (supra). The New York Court of Appeals did not pass on the question when it was presented to it. (Matter of Oliver v Postel, 30 NY2d 171.)
The authority of the trial courts to issue restraining orders against the media emanated from dictum in the landmark decision of Sheppard v Maxwell (384 US 333). In that opinion, Justice Clark added two statements: "We * * * do not consider what sanctions might be available against a recalcitrant press” (which violated the Judge’s orders) (p 358) and "The courts must take such steps by rule and regulation that will protect their processes from prejudicial outside interference” (p 363).
Since Sheppard, there have been 174 cases involving restrictive orders according to the Reporters Committee for Freedom of the Press which keeps track of such orders (Landau, Fair Trial and Free Press: A Due Process Proposal, 62 ABAJ 55), and 80 of the 94 United States District Courts have standing orders. (Chicago Council of Lawyers v Bauer, 522 F2d 242.)
There is a plethora of decisions supporting the defendant’s position. (United States v Gurney, 75-3030 pending [5th Cir, 1975]; United States v Schiavo, 504 F2d 1, cert den 419 US 1096; United States v Columbia Broadcasting System, 497 F2d 102; United States v Tijerina, 412 F2d 661, cert den 396 US 990; Sun Co. of San Bernardino v Superior Ct., 29 Cal App 3d 815; Wood v Goodson, 253 Ark 2d 196; and Hamilton v Superior Ct., 270 Cal App 2d 767, cert den 396 US 985, among others.)
In support of the media’s argument, there is also no dearth of cases to which it can point. (Calley v Callaway, 519 F2d 184; United States v Schiavo, supra; United States v Columbia Broadcasting System, supra; United States v Dickinson, 465 F2d 496; Younger v Smith, 30 Cal App 3d 138; State ex rel. Miami Herald Pub. Co. v Rose, 271 So 2d 483 [Fla]; and State ex rel. Superior Ct. of Snohomish County v Sperry, 79 Wash 2d 69, cert den 404 US 939, among others.)
(The reason the same case is sometimes cited in support of both sides of this controversy is because the trial court’s decision upheld one view while the appellate court’s decision reversed such holding.)
There is strong language in opinions of the Supreme Court *430 of the United States indicating that it would be unlikely to tolerate restraints on the media. The following two decisions are examples.
In Sheppard v Maxwell (384 US 333, 350, supra), that court stated: "A responsible press has always been regarded as the handmaiden of effective judicial administration, especially in the criminal field. Its function in this regard is documented by an impressive record of service over several centuries. The press does not simply publish information about trials but guards against the miscarriage of justice by subjecting the police, prosecutors, and judicial processes to extensive public scrutiny and criticism. This Court has, therefore, been unwilling to place any direct limitations on the freedom traditionally exercised by the news media.”
This statement appears in the "Pentagon Papers Case” (New York Times Co. v United States, 403 US 713, 725-726): "But the First Amendment tolerates absolutely no prior judicial restraints of the press predicated upon surmise or conjecture that untoward consequences may result. Our cases, it is true, have indicated that there is a single, extremely narrow class of cases in which the First Amendment’s ban on prior judicial restraint may be overridden. Our cases have thus far indicated that such cases may arise only when the Nation 'is at war’ * * * during which times '(n)o one would question but that a government might prevent actual obstruction of its recruiting service or the publication of the sailing dates of transports or the number and location of troops.’ ”
However, there are two cases almost identical to the instant case where two Supreme Court Justices sitting as Circuit Court Justices reacted differently.
The first is Times-Picayune Pub. Corp. v Schulingkamp (419 US 1301, app dsmd as moot 420 US 985). This case involved an order of a State court restricting media coverage of pretrial proceedings and trial in a highly publicized rape and murder case. Justice Powell, as Circuit Justice in Chambers, granted a stay of this prior restraint.
While Justice Powell did not speak for the entire court, his following words on this subject bear careful scrutiny (pp 1301, 1305, 1307): "The record before me indicated a substantial possibility that the state court’s order is inconsistent with this Court’s decisions governing prior restraint of the news media * * * I articulated the general standards governing the grant of a stay application * * * There must be a significant possi *431 bility of reversal of the lower court’s decision * * * The court’s order imposes significant prior restraints on media publication. As such, it would come to this Court 'bearing a heavy presumption against its constitutional validity.’ [Citing cases.] Decisions of this Court repeatedly have recognized that trials are public events [citing cases].”
The second is Nebraska Press Assn. v Stuart (supra), again involving a sensational sexual assault and murder case. The State court prohibited publication by the media of the defendant’s confession and Justice Blackmun, as Circuit Court Justice in Chambers, refused to stay the State court’s order.
Justice Blackmun did not speak for the entire court either, but his following words (423 US 1319, 1324, 1327, 1332) are as equally interesting as Justice Powell’s: "The order in question obviously imposes significant prior restraints on media reporting. It therefore comes to me bearing a heavy presumption against its constitutional validity * * * At the same time I cannot, and do not, at least on an application for a stay and at this distance, impose a prohibition upon the Nebraska courts from placing any restrictions at all upon what the media may report prior to trial * * * I therefore conclude that certain facts that strongly implicate an accused may be restrained from publication by the media prior to his trial.”
It is therefore obvious that it is exceedingly difficult to predict which course of action the Supreme Court of the United States will take in this area of vital concern.
Resort to decisions of the courts of this State is likewise not extremely helpful in solving this problem.
The Court of Appeals in Matter of Oliver v Postel (30 NY2d 171, 180, 183, supra), stated its views on this subject as follows: "the law is settled that the contempt power may not be utilized to impose punishment for the publication of out-of-court statements relating to a pending court proceeding, except where such statements are shown to present 'a clear and present danger’ or 'a serious and imminent threat’ to the administration of justice * * * But whether the judge would have the power in any such case to close the court room to the public and the press in order to protect the defendant’s right to a fair trial is, as already indicated, a question we need not here pass upon.”
The Appellate Division, Second Department, in Matter of New York Times Co. v Starkey (51 AD2d 60, 64, supra), hit the issue head-on and declared: "In exercising the power of *432 enforcement, the right to a fair trial may require the issuance of an order, temporary in duration, forbidding the publication by the press of information prejudicial to a defendant on trial.”
However, the concurring opinion of Justice Shapiro was equally unequivocal. He expressed himself as follows (pp 65-66, 68): "I do not agree with that conclusion for I am firmly of the opinion that the press, and all other communications media, may not, under the strictures of the First Amendment, be enjoined from publishing information with regard to pending judicial criminal proceedings * * * Whether undue frenetic activity of the press should be curbed should never be a matter for court decision.”
People v Pratt (27 AD2d 199) was decided by the Appellate Division, Third Department, prior to Oliver. That case is similar to this case because there the defendant sought to exclude the press and the public from his pretrial hearing to suppress a confession to avoid the publicity which would be attendant thereon. The trial court refused, but the Appellate Division granted a change of venue because of such refusal and held that it was error to deny the defendant’s motion for a closed hearing.
In view of Oliver the holding of Pratt, while dispositive of this issue, is probably of doubtful validity.
Based upon Oliver, People v Holder (70 Misc 2d 31) reversed its previous order granting the defendant’s application for a closed trial. That court held that the decision of the Court of Appeals sharply curtailed the discretionary power of the court to exclude the public and the news media.
That court stated the following (p 33): "The court has given weight to the guidelines agreed upon and subscribed to by the New York Fair Trial Free Press Conference and concludes that the public interest mandated that this trial is subject to the searchlight of the public and the press. The fact that the defendant has waived his right to a public trial is insufficient to deprive the public and press of their rights, for the right to a public trial is not only to protect the accused but to protect as much the public’s right to know what goes on when men’s lives and liberty are at stake.”
The latest pronouncement of the New York Court of Appeals on this matter, while albeit not in a case at all similar to this one, was made in Matter of Nichols v Gamso (38 NY2d 907) decided February 19, 1976. There the court agreed that *433 the record involving the censure of a Judge should not be disclosed. This language was used (p 909): "In the particular combination of circumstances in this case and under the application of a principle rarely to be invoked, therefore, we cannot say that the determination not to disclose was an abuse of discretion as a matter of law.”
It has been aptly demonstrated that it would be a risky venture for this court to attack this problem of constitutional dimension. Moreover, a court should not do so if it is unnecessary to the resolution of the issue before the court. (People v Carcel, 3 NY2d 327.)
This is the situation here for there is one area in this constitutional dilemma where both the Federal and State courts agree. This area is that the imposition of prior restraints on the media should be the last resort of the court to ensure that a defendant receives a fair trial.
In Sheppard (384 US 333, supra), Justice Clark set forth a variety of techniques by which jurors could be insulated from prejudicial publicity. Justice Powell in Times-Picayune Pub. Corp. (419 US 1301, supra), stated that the court has available alternative means for protecting a defendant’s right to a fair trial. Oliver (30 NY2d 171, supra) held that the courts should take appropriate remedial steps to protect their processes from prejudicial outside interference other than restraints on the media. And New York Times Co. (supra) warned that all other measures within the power of the court to insure a fair trial must be found to be unavailing before the rights of the media are curtailed.
The guidelines recommended by the Legal Advisory Committee on Fair Trial and Free Press (62 ABAJ 63) are in accord. Its preamble recites that the committee stresses that it does not recommend or encourage the use of judicial restrictive orders and that it specifically recommends against the issuance of any order which would impose direct restraints on the press.
Since the purpose of the pretrial proceeding in the instant case is to suppress the alleged statement of the defendant, all that is necessary is that the prosecution show that the alleged statement was voluntary (People v Huntley, 15 NY2d 72) and that the defendant was advised of his constitutional rights (Miranda v Arizona, 384 US 436).
There would seem to be no compelling necessity for the alleged statement itself to be testified to. The defendant has *434 already received notice of the contents of such statement. Skillful questioning by both the prosecution and defense should be able to elicit sufficient information about the manner in which the alleged statement was obtained to enable the court to determine if the requirements of Huntley and Miranda were met. By employing this means the possible prejudicial pretrial publicity complained of by the defendant can be avoided without restraining the media in any manner.
The media cannot complain if the alleged statement is not introduced in evidence. The First Amendment does not guarantee the media a constitutional right of special access to information not available to the public generally (Branzburg v Hayes, 408 US 665). To further protect the defendant from any possible prejudicial publicity concerning such statement, the court will not make public its findings in regard to the admissibility of this statement until after the trial of this action. (People v Pratt, supra; People v Marturano, 24 AD2d 733; People v La Belle, 44 Misc 2d 324.)
In this manner the court is able to satisfy the defendant’s objective while simultaneously denying the first and third aspects of his application which are vigorously resisted by the media.
No such method is available to avoid ruling directly on the second aspect of the defendant’s application. Unfortunately, the defendant is not on too solid ground in this request.
The media is not a public utility subject to reasonable governmental regulation in matters affecting the exercise of journalistic judgment as to what shall be printed. (Miami Herald Pub. Co. v Tornillo, 418 US 241; Mills v Alabama, 384 US 214.) The First Amendment erects a virtually insurmountable barrier between the Government and the media so far as Government tampering with news in advance of publication is concerned (New York Times Co. v United States 403 US 713, supra).
Times-Picayune Pub. Corp. v Schulingkamp (419 US 1301, supra) involved, among other matters, a Federal District Court’s ban on the publication of the criminal records or other discrediting information about the defendants unless admitted at trial. As discussed supra, this restraining order was stayed by Justice Powell sitting as a Circuit Court Judge.
The Supreme Court of the United States in Murphy v Florida (421 US 794) had before it a case where several jurors had heard about the defendant’s past crimes and it neverthe *435 less affirmed a guilty verdict. The court asserted that exposure to information about a defendant’s prior convictions does not alone presumptively deprive the defendant of due process.
In Oliver (30 NY2d 171, supra) two newspapers published articles reciting that the defendant had a criminal record and was reputed to have underworld connections. The trial court warned the news media that he would hold in contempt any reporter who reported anything other than what transpired in the courtroom. When the press persisted the court determined that their conduct was contumacious and closed the courtroom. The Court of Appeals condemned this procedure, which indicates that it is beyond the power of the court to prohibit the media from publishing background material.
Thus, the second part of the defendant’s application must be denied. This should not pose a monumental problem for the defendant. As Justice Shapiro noted in New York Times Co. (supra), despite massive and nationwide detrimental publicity, former Attorney-General John Mitchell and former Secretary of the Treasury John Connolly were both acquitted. And the voir dire can be an effective device for ensuring jury impartiality despite pretrial publicity. (Margoles v United States, 407 F2d 727 [7th Cir, 1969], cert den 396 US 833.)
The defendant’s only remedy for the media’s reference to him in derogatory terms is civil in nature.
Martin v Merola (— F2d — [CCA 2d, 1976]; NYLJ, Feb. 1, 1976, p 1) is authority for the proposition that States’ prosecutors who inform the media that a defendant is linked to the "Mafia” or a "crime family” could be sued for money damages under the Federal civil rights law. In that case, six defendants filed suit in Federal court claiming their right to a fair trial had been infringed when a State prosecutor announced to the press that they were "linked directly to Mafia crime families.”
So it may be that the defendant is not completely remediless in this particular area.
The tenor of this decision would seem to be consonant with all the applicable law to date which evinces a preference to insulate the jury rather than inhibit the media.
Therefore: (1) the application of the defendant to enjoin the media from publishing the alleged statement of the defendant is denied; however, the contents of the alleged statement shall not be disclosed during the pretrial hearing and the decision of the court as to the admissibility of such statement will not *436 be disclosed until the trial of this action; (2) the application of the defendant to enjoin the media from describing the defendant in derogatory terms is denied; and (3) the application of the defendant to conduct the pretrial hearing in a closed courtroom is denied.