FEDERAL TRADE COMMISSION,
Petitioner,

v.

BRITISH OXYGEN COMPANY, LTD.,
BOC Financial Corporation, BOC Hold-
ings, Ltd., British Oxygen Investments,
Ltd., and Airco, Inc., Respondents.

Civ. A. No. 74–31.

United States District Court,
D. Delaware.

Aug. 26, 1977.

Richard L. McMahon of Potter, Anderson
& Corroon, Wilmington, Del., Jay H. Top-
kis, Lewis A. Kaplan and Moses Silverman
of Paul, Weiss, Rifkind, Wharton & Garri-
son, New York City, of counsel, for BOC
Intern. Ltd., f/k/a British Oxygen Co., Ltd.,
BOC Financial Corp., BOC Holdings, Ltd.,
British Oxygen Investments, Ltd.

R. Franklin Balotti of Richards, Layton &
Finger, Wilmington, Del., W. Foster Wol-
len, R. Bruce MacWhorter of Shearman &
Sterling, New York City, of counsel, for
AIRCO, Inc.

James W. Garvin, Jr., U. S. Atty., and
Kent Walker, Asst. U. S. Atty., Wilming-
ton, Del., Michael N. Sohn, Gen. Counsel,
Gerald P. Norton, Deputy Gen. Counsel,
Jerold D. Cummins, Acting Asst. Gen.

Counsel, and David M. Fitzgerald, Atty., Washington, D. C., for the Federal Trade Commission.

LATCHUM, Chief Judge.

On March 8, 1974, this Court entered an Order granting the Federal Trade Commission's (the "Commission") application for a preliminary injunction and enjoining the British Oxygen Company, Ltd. ("BOC") from taking any action which might hinder divestiture of BOC's controlling stock interest in AIRCO, Inc. ("AIRCO") pending an expedited administrative proceeding to determine if BOC's controlling interest in AIRCO violated the antitrust laws. BOC has now filed a petition seeking an Order dissolving or modifying that preliminary injunction.[1]

In February, 1974, the Commission issued a complaint charging BOC with violations of § 7 of the Clayton Act, 15 U.S.C. § 18 (1970) and § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 (1970) *as amended* (Supp. IV 1974), based principally upon the theory that BOC's acquisition of a controlling stock interest in AIRCO would eliminate BOC as an actual potential entrant into the American industrial gases market. In addition, the complaint charged that the planned merger of BOC and AIRCO would substantially lessen competition in three product lines of medical inhalation anesthetic equipment in which AIRCO and two American subsidiaries of BOC were in direct competition. In order to preserve the status quo pending the outcome of its cease and desist proceeding, the Commission applied for, and was granted, a preliminary injunction requiring BOC to maintain AIRCO as a separate entity.[2] The preliminary injunction was entered pursuant to § 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b) (Supp. IV 1974), and was expressly based upon this Court's de-

termination at the time that the Commission had satisfied its burden of making a proper showing of its likelihood of ultimate success and that, after considering "the equities," temporary injunctive relief would be in the public interest. After several months of hearings, the Commission affirmed the holding of its administrative law judge that the BOC acquisition of AIRCO did in fact violate § 7 of the Clayton Act. The Commission's affirmance was apparently predicated entirely on the belief that while BOC as a potential entrant in the relevant markets was not presently having a procompetitive effect, divestiture of its AIRCO interest would serve to increase future competition in the industrial gases market and would preserve existing procompetitive effects in the medical equipment submarkets.

Thereafter BOC and AIRCO filed a petition with the Second Circuit Court of Appeals, asking that the Commission's divestiture order be set aside. On May 19 of this year the Second Circuit reversed the Commission on the merits of its industrial gases holding, set aside the order directing BOC to divest its controlling stock interest in AIRCO, and remanded the Commission's medical inhalation anesthetic equipment holding for reconsideration in light of the reversal of its industrial gases holding.[3] This latest event is what prompted BOC's petition to dissolve or modify this Court's preliminary injunction.

The pertinent provision of § 13(b) of the Federal Trade Commission Act reads:

"Whenever the Commission has reason to believe—

(1) that any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission, and

---

1. Docket Item 31. The petition is actually filed jointly by BOC International Ltd., formerly known as the British Oxygen Company, Ltd., and several of its subsidiaries, all of which are named respondents. Reference throughout this opinion to BOC includes the related companies.

2. *FTC v. British Oxygen Co., Ltd.,* 1974–1 Trade Cases ¶ 75.004 (D.Del.1974), *vacated in part on other grounds,* 529 F.2d 196 (C.A.3, 1976) (en banc).

3. *BOC International Ltd. v. FTC,* 557 F.2d 24 (C.A.2, 1977).

(2) that the enjoining thereof pending the issuance of a complaint by the Commission *and until such complaint is dismissed by the Commission or set aside by the court on review,* or until the order of the Commission made thereon has become final, would be in the interest of the public—

the Commission by any of its attorneys designated by it for such purpose may bring suit in a district court of the United States to enjoin any such act or practice. Upon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest, and after notice to the defendant, a temporary restraining order or a preliminary injunction may be granted without bond . . . ."

15 U.S.C. § 53(b) (Supp. IV 1974) (emphasis added). The Commission is therefore empowered to seek a preliminary injunction until its administrative complaint is either dismissed by the Commission itself or set aside by the court on review. The words "court on review" logically refer to the Circuit Courts of Appeals which are granted exclusive jurisdiction to enforce, set aside, or modify orders of the Commission.[4] Section 5(c) of the Federal Trade Commission Act also pertinently provides:

"Any person, partnership, or corporation required by an order of the Commission to cease and desist from using any method of competition or act or practice may *obtain a review of such order in the court of appeals of the United States,* within any circuit where the method of competition or the act or practice in question was used or where such person, partnership, or corporation resides or carries on business, by filing in the court, within sixty days from the date of the service of such order, a written petition praying that the order of the Commission be set aside. . . . Upon such filing of the

petition the court shall have jurisdiction of the proceeding and of the question determined therein concurrently with the Commission until the filing of the record and shall have power to make and enter a decree affirming, modifying, or setting aside the order of the Commission, and enforcing the same to the extent that such order is affirmed and to issue such writs as are ancillary to its jurisdiction or are necessary in its judgment to prevent injury to the public or to competitors pendente lite. . . . ."

15 U.S.C. § 45(c) (1970) (emphasis added). As noted earlier, BOC and AIRCO accordingly filed a petition with the Second Circuit, the court on review, which thereafter entered a decree setting aside the Commission's divestiture order and remanding for reconsideration of the medical equipment aspect of the case. With the outright reversal of the Commission's pivotal determination that the proposed merger would substantially lessen competition in the industrial gases market in violation of § 7 of the Clayton Act, the Commission's likelihood of ultimate success—an essential consideration in a § 13(b) application for a preliminary injunction—was inevitably attenuated. Nevertheless, the Commission contends that it would be premature to dissolve or modify the preliminary injunction since there is still a possibility that it will succeed on the merits of the underlying antitrust proceeding left upon remand.

■ This ostensible answer, however, fails to appreciate the significance of the Second Circuit's reversal. It should be remembered that this Court originally entered a preliminary injunction after a proper showing of the Commission's probable success on the merits of its contention that the planned merger would violate the antitrust laws. Now that a panel of the Second Circuit, after a full review of all the evidence, has unanimously set aside the Com-

4. Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 (1970) *as amended* (Supp. IV 1974) provides:

"(d) Upon the filing of the record with it the jurisdiction of the court of appeals of the United States to affirm, enforce, modify, or set aside orders of the Commission shall be exclusive."

mission's divestiture order and rejected the essential finding which served as a necessary predicate for that order, the Commission's likelihood of success, the very basis for this Court's preliminary injunction, is necessarily diminished. Momentum has shifted decidedly against the Commission and merely emphasizing the strength of what little remains of the case cannot conceal the damage wrought by the reversal.

■ The Commission has further suggested that the Court withhold an opinion on BOC's petition until the Solicitor General, or the Commission itself, decides whether to file a petition with the Supreme Court for certiorari in *BOC International Ltd. v. FTC, supra,* and, assuming that a petition is filed, and is granted, to await the Supreme Court's mandate.[5] However, the Court cannot agree to follow this course for it would impose an additional requirement under § 13(b) without any perceived justification. If Congress had intended for a § 13(b) preliminary injunction to continue until the Commission's complaint is dismissed, set aside by the court on review, and certiorari denied or the cause reversed by the Supreme Court, it could in plain language have easily so provided when the amended subsection (b) to § 13 was recently considered and passed.[6]

Moreover, the fact that the Commission may seek certiorari in this case does not, in this Court's opinion, necessarily enhance its likelihood of ultimate success. The Second Circuit reversed the Commission's industrial gases holding on the narrow ground that it applied an inappropriate legal standard. The Commission held that there was a reasonable probability that BOC would eventually enter the American industrial gases market by internal expansion but for its acquisition of AIRCO. The merger would therefore have, according to the Commission, probable anticompetitive effects violative of the antitrust laws. The Second Circuit, however, reversed solely on the ground that in the actual potential entrant situation the finding of probable entry must contain some "reasonable temporal estimate related to the near future, with 'near' defined in terms of the entry barriers and lead time necessary for entry in the particular industry."[7] Since a fundamental "precondition" to application of the actual potential entrant doctrine was not established on the record, the Court of Appeals expressly declined to examine the issue of the validity of that doctrine. In addition, the Supreme Court in two relatively recent cases also refused to wrestle with the basic issue of the doctrine's validity, resting instead on a conclusion in each case that an essential predicate for its application had not been established. *United States v. Marine Bancorporation, Inc.,* 418 U.S. 602, 94 S.Ct. 2856, 41 L.Ed.2d 978 (1974); *United States v. Falstaff Brewing Corp.,* 410 U.S. 526, 93 S.Ct. 1096, 35 L.Ed.2d 475 (1973). The Fourth Circuit as well has "recognized that the doctrine of *actual* potential entry as a basis for finding a violation of the antitrust laws is an evolving doctrine and not one with regard to which a body of controlling authority has yet been developed." *FTC v. Atlantic Richfield Co.,* 549 F.2d 289, 293 (C.A.4, 1977) (footnote omitted). In fact, Judge Winter, writing for a unanimous panel in that case, observed in dictum that:

> "The novelty of the doctrine and the absence of definitive authority sanctioning it and defining its parameters could well serve as a basis for denial of a preliminary injunction under § 13(b), since it is difficult, if not impossible, to determine FTC's chances of ultimate success when the law is so uncertain and the parameters of the doctrine obscure."

---

**5.** The time to file a petition was due to expire on August 17, 1977; BOC informed the Court by letter, however, that the Solicitor General has asked the Supreme Court to extend the time to file the petition until October 16, 1977. In response, of course, BOC's counsel filed a similar application.

**6.** 15 U.S.C. § 53(b) (Supp. IV 1974); for the legislative history, see 1973 U.S. Code Cong. & Admin. News, p. 2533.

**7.** *BOC International Ltd. v. FTC,* 557 F.2d 24, *supra.*

549 F.2d at 294. In light of the narrowness of the Second Circuit's holding and the fact that it specifically eschewed any intention of passing upon the fundamental validity of the Commission's legal theory, it appears less than probable that four members of the Supreme Court would consider the underlying issue sufficiently meritorious for the grant of certiorari. *See Beame v. Friends of the Earth*, —— U.S. ——, 98 S.Ct. 4, 54 L.Ed.2d 23 (1977) (Marshall, J., in chambers); *Commodity Futures Trading Commission v. British American Commodity Options Corp.*, —— U.S. ——, ——, 98 S.Ct. 10, 54 L.Ed.2d 28 (1977) (Marshall, J., in chambers); *Times-Picayune Publishing Corp. v. Schulingkamp*, 419 U.S. 1301, 1305, 95 S.Ct. 1, 42 L.Ed.2d 17 (1975) (Powell, J., Circuit Justice).

█ This Court therefore can no longer conclude that there is a reasonable likelihood that the Commission will ultimately succeed on the merits of its antitrust proceeding, nor that the equities or the public interest weigh in favor of continuing the restrictions earlier imposed upon BOC. In the absence of such a conclusion, of course, the statutory basis for the preliminary injunction evaporates. Accordingly, the Order of this Court granting the Commission's application for a preliminary injunction will be dissolved.[8]

---

8. There is no doubt that the Court has the inherent power to modify or dissolve a preliminary injunction whose purpose has been fulfilled or as changing conduct or circumstances may require. *United States v. Swift & Co.,* 286 U.S. 106, 114, 52 S.Ct. 460, 76 L.Ed. 999 (1932); *Indiana Quartered Oak Co. v. FTC,* 58 F.2d 182, 184 (C.A.2, 1932). The Commission, however, contends that BOC's petition is a delitescent effort to relitigate issues already decided which, if permitted, will encourage parties to return to the Court at each development in the administrative proceeding to reargue the likelihood of success, the equities, or the public interest, contrary to notions of finality and conservation of judicial resources. *But cf.* Rule 62(c), F.R.Civ.P. (authorizing trial courts to suspend, modify, restore, or grant injunctions during periods when the case may be on interlocutory appeal), *and* Rule 60(b), F.R.Civ.P. (conferring on trial courts the power to amend or modify permanent injunctions). Suffice it to say that such a scenario has not occurred in this case and the Court is not particularly moved by an in terrorem argument not in accord with reality.