MAGGIO, WARDEN *v.* WILLIAMS

No. A–301.   Decided November 7, 1983

PER CURIAM.

On October 23, 1983, less than two days before Williams' scheduled execution, the Court of Appeals for the Fifth

Circuit stayed the execution "pending final action of the Supreme Court." Because we agree with applicant that the stay was improvidently imposed, we grant his motion to vacate the stay and to allow the State to reschedule Williams' execution.

## I

Williams was sentenced to death for killing a security guard while robbing a grocery store in Baton Rouge, La. His conviction and sentence were affirmed by the Louisiana Supreme Court. *State* v. *Williams*, 383 So. 2d 369 (1980). After we denied Williams' petition for certiorari, 449 U. S. 1103 (1981), and his request for rehearing, 450 U. S. 971 (1981), he unsuccessfully sought a writ of habeas corpus in the Louisiana state courts. He then filed his first petition for habeas corpus in the District Court for the Middle District of Louisiana, presenting the same 13 issues that had proved unavailing in the state courts. The District Court held no hearing, but issued a written opinion denying Williams' petition. See *Williams* v. *Blackburn*, 649 F. 2d 1019, 1021–1026 (CA5 1981) (incorporating District Court's decision). The District Court's judgment was affirmed by a panel of the Court of Appeals for the Fifth Circuit, *ibid.*, but an order was entered directing that the appeal be reheard en banc. On rehearing, the en banc Court of Appeals rejected each of Williams' many objections to his conviction and sentence and affirmed the judgment of the District Court. *Williams* v. *Maggio*, 679 F. 2d 381 (1982) (en banc). On June 27, 1983, we again denied Williams' petition for certiorari, 463 U. S. 1214, and we denied his request for rehearing on September 8, 1983, 463 U. S. 1249.

After unsuccessfully renewing his attempt to win relief in the state courts, Williams filed a second petition for habeas corpus in the District Court, raising two claims that had previously been rejected and two additional claims. The District Court issued a detailed opinion in which it refused to grant the writ or to stay Williams' execution. *Williams* v. *King*, 573 F. Supp. 525 (1983). Because it believed Wil-

liams' contentions to be "frivolous and without merit," the District Court also denied his request for a certificate of probable cause, which, under 28 U. S. C. § 2253, is a prerequisite to an appeal. The Fifth Circuit granted a certificate of probable cause and affirmed the judgment of the District Court, but nevertheless issued a stay. The court reviewed Williams' claims and "expressly [found] that each is without merit." *Williams* v. *King*, 719 F. 2d 730, 733 (1983). In light of recent actions by this Court, however, the Court of Appeals concluded with respect to Williams' "proportionality" claim that "a complete review of the law on this matter may be anticipated. With a person's life at stake, we must await that review or further directions from the Supreme Court." *Ibid.*

## II

Just last Term, we made clear that we would not automatically grant stays of execution in cases where the Court of Appeals had denied a writ of habeas corpus. *Barefoot* v. *Estelle*, 463 U. S. 880, 895 (1983). A stay application addressed to a Circuit Justice or to the Court will be granted only if there exists "'a reasonable probability that four members of the Court would consider the underlying issue sufficiently meritorious for the grant of certiorari or the notation of probable jurisdiction.'" *White* v. *Florida*, 458 U. S. 1301, 1302 (1982) (POWELL, J., in chambers) (quoting *Times-Picayune Publishing Corp.* v. *Schulingkamp*, 419 U. S. 1301, 1305 (1974) (POWELL, J., in chambers)). We perceive no reason to apply a different standard in determining whether a stay granted by a Court of Appeals pending disposition of a petition for certiorari to this Court should continue in effect.

The grounds on which Williams would request certiorari are amply evident from his opposition to the motion to vacate the stay, his voluminous filings in the lower courts, and the opinions and proceedings in the District Court and Court of Appeals. None of these claims warrant certiorari and plenary consideration in this case. Accordingly, we conclude

that the stay, which the Court of Appeals apparently granted in view of the possibility that we would disagree with its analysis of the constitutional issues raised by Williams, should be vacated.

Williams' claims may be summarized briefly. He argues, first, that the Louisiana Supreme Court reviewed the proportionality of his death sentence on a districtwide rather than a statewide basis, and that such review does not adequately ensure that his death sentence has been imposed in a rational and nonarbitrary manner. Second, the prosecutor's closing argument allegedly prejudiced the jury against Williams and elicited a decision based on passion rather than reason. Third, the trial court's instruction on lesser offenses, given despite the absence of evidence warranting such an instruction, is claimed to have violated the rule established in *Hopper* v. *Evans*, 456 U. S. 605 (1982), and to have denied Williams due process. Fourth, the exclusion for cause of three veniremen who opposed the death penalty at the guilt-innocence phase of Williams' trial, although proper under *Witherspoon* v. *Illinois*, 391 U. S. 510 (1968), allegedly deprived Williams of a jury representative of a fair cross-section of the community.

Williams' second, third, and fourth contentions warrant little discussion. As Williams made clear in his second petition for state habeas corpus, he challenged the prosecutor's closing argument, either directly or indirectly, in his first state habeas proceeding. The Louisiana Supreme Court ultimately rejected his challenge, although two justices indicated that the prosecutor's statements raised a substantial question and one concluded that the statements constituted reversible error. *State ex rel. Williams* v. *Blackburn*, 396 So. 2d 1249 (1981). Williams' failure to raise this claim in his first federal habeas proceeding is inexcusable, but the District Court nevertheless gave it full consideration in the second federal habeas proceeding. Applying the standard established in *Donnelly* v. *DeChristoforo*, 416 U. S. 637 (1974), the District

Court examined the prosecutor's closing argument at length and concluded that it did not render Williams' trial fundamentally unfair.

The trial court's instruction on lesser offenses was clearly proper under state law, and the District Court's review of the record led it to conclude that the evidence fully justified the trial court's charge.

Williams' challenge to the exclusion for cause of certain veniremen was previously rejected by the Fifth Circuit and was presented to this Court in his petitions for certiorari and his motion for rehearing following the denial of his second petition. He has now recast his argument as an attack on the representativeness of the jury that convicted him. In *Witherspoon,* we found the extant evidence insufficient to demonstrate that "the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction." 391 U. S., at 518. Williams claims that he is entitled to a hearing on the question whether the jury selection procedures followed here had these effects. But he has not alleged that veniremen were excluded for cause on any broader basis than authorized in *Witherspoon.* The District Court characterized the evidence proffered by Williams on the question whether the jury was less than neutral with respect to guilt as tentative and fragmentary, and we cannot conclude that it abused its discretion in refusing to hold an evidentiary hearing on this issue. Further review is not warranted.

Williams' challenge to the Louisiana Supreme Court's proportionality review also does not warrant the issuance of a writ of certiorari. The en banc Fifth Circuit has carefully examined the Louisiana Supreme Court's procedure and found that it "provides adequate safeguards against freakish imposition of capital punishment." *Williams* v. *Maggio,* 679 F. 2d, at 395. This conclusion was challenged in this Court in Williams' petition for certiorari following the Court of Ap-

peals' decision and in his motion for reconsideration of our denial of that petition. We were, of course, fully aware at that time that we had agreed to decide whether some form of comparative proportionality review is constitutionally required. See *Pulley* v. *Harris*, 460 U. S. 1036 (1983).

Since agreeing to decide this issue in *Pulley*, the Court has consistently denied challenges to the Louisiana Supreme Court's proportionality review scheme that were identical to that raised by Williams. See *Lindsey* v. *Louisiana*, *post*, p. 908; *James* v. *Louisiana*, *post*, p. 908; *Sonnier* v. *Louisiana*, 463 U. S. 1229, rehearing denied, 463 U. S. 1249 (1983). See also *Narcisse* v. *Louisiana*, *post*, p. 865. Williams asserts that his execution should be stayed because we have issued a stay in another Louisiana death case, *Baldwin* v. *Maggio*, 463 U. S. 1251 (1983). But our decision there turned not on the substantiality of applicant's *Pulley* argument, but on the fact that applicant raised a substantial challenge to the effectiveness of his trial counsel, similar to those we shall resolve in two cases set for argument this Term. *Strickland* v. *Washington*, 462 U. S. 1105 (1983); *United States* v. *Cronic*, 459 U. S. 1199 (1983).

As Williams notes, JUSTICE WHITE recently granted a stay in a case raising a proportionality challenge to a death sentence imposed in Texas. *Autry* v. *Estelle*, *post*, p. 1301. Also, on October 31, the Court declined to vacate that stay. *Post*, p. 925. In that case, however, the Texas Court of Criminal Appeals, like the California Supreme Court in *Pulley*, had wholly failed to compare applicant's case with other cases to determine whether his death sentence was disproportionate to the punishment imposed on others. Under those circumstances, it was reasonable to conclude that Autry's execution should be stayed pending the decision in *Pulley*, or until further order of the Court.

That is not the case here. Our prior actions are ample evidence that we do not believe that the challenge to districtwide, rather than statewide, proportionality review is

an issue warranting a grant of certiorari. Our view remains the same. Nor did Williams convince the lower courts that he might have been prejudiced by the Louisiana Supreme Court's decision to review only cases from the judicial district in which he was convicted. Indeed, the District Court examined every published opinion of the Louisiana Supreme Court affirming a death sentence and concluded that Williams' sentence was not disproportionate regardless of whether the review was conducted on a districtwide or statewide basis. We see no reason to disturb that judgment. Finally, Williams has not shown, nor could he, that the penalty imposed was disproportionate to the crimes he was convicted of committing.

## III

The District Court's careful opinion was fully reviewed by the Court of Appeals, which found no basis for upsetting the District Court's conclusion that Williams' contentions were meritless. The arguments that Williams raised for the first time in these proceedings are insubstantial, and the arguments that he has attempted to relitigate are no more persuasive now than they were when we first rejected them. We conclude, therefore, that the stay entered by the Court of Appeals should be vacated.

*It is so ordered.*

JUSTICE STEVENS, concurring in the judgment.

In my opinion the application to vacate the stay raises a serious question about the propriety of the prosecutor's argument to the jury at the sentencing phase of respondent's trial. In that argument the prosecutor sought to minimize the jury's responsibility for imposing a death sentence by implying that the verdict was merely a threshold determination that would be corrected by the appellate courts if it were not the proper sentence for this offender. I quote some of that argument:

*"I want to read you some laws because something they [the defense] said, don't sentence this man to death, don't kill this man. You see, you have the last word on the verdict, and it but, by far you don't have the last word on it if you return it.* The Louisiana Supreme Court has enacted a series of statutes that I want to read to you. What happens if you return a death penalty in this case. Because the law that's set up is very exacting, detailed and complicated procedure for a review of this court, the Louisiana Supreme Court, and other courts before any death penalty can be imposed. The law states, 905.9, Review on Appeal, The Supreme Court of Louisiana shall review of every sentence of death to determine if it is excessive. The Court, by rule, shall establish such procedures as necessary to satisfy constitutional criteria for review. And, then the statute, they enact it. See, not necessarily, it's mandatory that the Supreme Court review it. There's seven judges on the Supreme Court. The highest judges in this state. For it to be upheld, four of them will have to approve it. Well, what do they review? They state that every sentence of death shall be reviewed by this court to determine if it is excessive, and in determining whether the sentence is excessive, the court shall determine. A. Whether the sentence was imposed under the influence of passion, prejudice or any other arbitrary factors. If they decide it was, they can reverse it and order a life sentence to be imposed. Whether the evidence supports the jury's findings of a statutory aggravating circumstance. If they find it didn't, they can reverse it and order a life sentence. Where the sentence is disproportionate to the penalty imposed in similar cases considering both the crime and the defendant. If they don't think the crime was heinous enough, they can reverse it and order a life sentence. If they don't think this defendant—if they think the crime was hei-

nous enough and the statutory circumstances were proved but they don't think it ought to be applied to this defendant, they can reverse it and order a life sentence. Whenever the death penalty is imposed, a verbation *[sic]* transcript of the sentence hearing along with the record required on appeal shall be transferred to the Court. *They review everything that went on in this trial.* . . . And there is a total and complete investigation done on the defendant to determine whether or not they will let your decision to impose the death penalty stand. And only then does it make it through the Louisiana State Supreme Court, and the defendant has a right, if he wishes—I'm not saying that it's granted in every case. It could be denied. It could be appealed all the way through the United States Supreme Court.

.           .           .           .           .

"But more important, what is this verdict going to mean? *You see, you represent a certain segment of our society, law abiding people, raising families, working for a living, not robbing stores. You're the people that set the standards in this community. The Justices of the Supreme Court will review, and determine their decision whether or not if you decide to give him the death penalty, whether or not you were correct or not,* but you see,—it use *[sic]* to be one." Tr. 290–292, 296 (emphasis supplied).

In my view, this argument encouraged the jury to err on the side of imposing the death sentence in order to "send a message" since such an error would be corrected on appeal (while a life sentence could not). I do not believe that argument accurately described the function of appellate review in Louisiana. The Louisiana Supreme Court does not review "everything" that occurred during the trial. If it finds that one aggravating factor supported the jury's verdict, it will not consider the defendant's claim that the jury improperly

relied upon other aggravating factors in reaching its verdict. See *State* v. *James*, 431 So. 2d 399, 405–406 (La.), cert. denied, *post*, p. 908. That rule was applied by the Louisiana Supreme Court in this very case. See *State* v. *Williams*, 383 So. 2d 369, 374 (La. 1980), cert. denied, 449 U. S. 1103 (1981). While that limitation on appellate review is constitutionally permissible in the context of Louisiana's death penalty statute, see *Zant* v. *Stephens*, 462 U. S. 862 (1983), given the state-law premises of Louisiana's capital punishment scheme, see *James, supra*, at 406, it certainly is a more limited form of appellate review than that described by the prosecutor.

In my opinion, the argument was prejudicial to the accused, both because it appears to have misstated the law and because it may have led the jury to discount its grave responsibility in determining the defendant's fate. A prosecutor should never invite a jury to err because the error may be corrected on appeal. That is especially true when the death penalty is at stake.

Nevertheless, because the essence of this issue was raised in prior proceedings questioning the competency of trial counsel—who failed to object to the argument when it was made—the Court is justified in applying a strict standard of review to this second federal habeas corpus application. See *Sanders* v. *United States*, 373 U. S. 1, 15–17 (1963). I do not find an adequate justification for respondent's failure to raise this argument in his earlier federal habeas action. Since respondent did raise the related argument of ineffectiveness of counsel, he was no doubt aware of this argument and may have deliberately chosen not to raise it in the first habeas corpus petition. See *Barefoot* v. *Estelle*, 463 U. S. 880, 895 (1983); *Rose* v. *Lundy*, 455 U. S. 509, 520–521 (1982) (plurality opinion); *Fay* v. *Noia*, 372 U. S. 391, 438–440 (1963); *Townsend* v. *Sain*, 372 U. S. 293, 317 (1963). Moreover, since competent counsel failed to object to the argument at the trial itself, thereby failing to avail himself of the usual

procedure for challenging this type of constitutional error, I question whether it can be said that this trial was fundamentally unfair.   See *Rose* v. *Lundy, supra,* at 543, and n. 8 (STEVENS, J., dissenting).   Accordingly, though not without misgivings, I concur in the Court's decision to vacate the stay.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, dissenting.

Before the Court is an application, filed by Ross Maggio, Warden of the Louisiana State Penitentiary, to vacate a stay of execution granted by the United States Court of Appeals for the Fifth Circuit.[1]   Because the condemned, Robert Wayne Williams, has raised a substantial constitutional claim relating to the proportionality review undertaken by the Supreme Court of Louisiana when it affirmed his death sentence, I would deny the application.   Moreover, because the Court's approach to this case displays an unseemly and unjustified eagerness to allow the State to proceed with Williams' execution, I dissent.

### I

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia,* 428 U. S. 153, 227 (1976) (BRENNAN, J., dissenting), I would deny the Warden's application to vacate the stay of execution granted by the Court of Appeals.

### II

Even if I accepted the prevailing view that the death penalty may constitutionally be imposed under certain circumstances, I would deny the application in this case because

---

[1] See *Williams* v. *King,* 719 F. 2d 730 (CA5 1983).   Prior to the action of the Court of Appeals, the execution of Williams had been set for between 12 p. m. and 3 a. m. on Tuesday, October 25, 1983.

Williams has raised a substantial constitutional claim concerning the disproportionate nature of his sentence.

This afternoon, the Court will hear oral argument in *Pulley* v. *Harris*, No. 82–1095, to consider whether the Constitution requires, prior to the execution of any death sentence, that a court of statewide jurisdiction determine whether a death sentence is proportional to the crime committed in light of the sentences received by similarly charged and convicted defendants in the State. Specifically, the questions presented to the Court for review are (1) whether the Constitution requires any proportionality review by a court of statewide jurisdiction prior to the execution of a state death sentence and (2) if so, whether the Constitution requires that such review assume any particular focus, scope, or procedural structure. Williams maintains that the order of the Court of Appeals staying his execution should be allowed to stand pending this Court's plenary consideration and disposition of the issues raised in *Pulley*. There is simply no defensible basis for disagreeing with him.

His common-sense position rests on several related arguments. Initially, it is beyond dispute that the constitutional status of proportionality review is currently unclear. That is undoubtedly why the Court granted the petition for a writ of certiorari in *Pulley*. See 460 U. S. 1036 (1983). It is also why JUSTICE WHITE, just last month, stayed the execution of James David Autry pending our decision in *Pulley*. See *Autry* v. *Estelle, post,* p. 1301 (in chambers). See also *infra,* at 62. Given this uncertainty, it seems grossly inappropriate to allow an execution to take place at this time if the condemned prisoner raises a nonfrivolous argument relating to the proportionality of his sentence. And in this case, Williams has raised at least two nonfrivolous, and indeed substantial, claims concerning the proportionality of his death sentence.

First, Williams contends that the Supreme Court of Louisiana has denied him due process of law by undertaking only a

districtwide or parishwide proportionality review in his case. See *State* v. *Williams*, 383 So. 2d 369, 374–375 (1980), cert. denied, 449 U. S. 1103 (1981). He properly notes that prior opinions of this Court have suggested that statewide proportionality review is required before any constitutional death sentence may be carried out. See, *e. g.*, *Gregg* v. *Georgia*, 428 U. S., at 198, 204–206 (opinion of Stewart, POWELL, and STEVENS, JJ.) (approving death penalty in Georgia where appellate court examines whether the same sentence has been imposed "'in similar cases throughout the state'"); *id.*, at 223 (opinion of WHITE, J.) (noting with approval that the State Supreme Court vacates the death sentence "whenever juries across the State impose it only rarely for the type of crime in question").[2] Given that the necessary scope of any required proportionality review is among the questions presented in *Pulley*, any uncertainty concerning the continuing validity of these prior statements will presumably be answered by our decision in that case. The execution of a condemned prisoner raising a nonfrivolous claim on this particular issue prior to the release of that decision belies our boast to be a civilized society.[3]

---

[2] See also *Proffitt* v. *Florida*, 428 U. S. 242, 258–260 (1976) (opinion of Stewart, POWELL, and STEVENS, JJ.) (approving death penalty in Florida where appellate review is done "by a court which, because of its statewide jurisdiction, can assure consistency, fairness, and rationality" in the imposition of the penalty); *Jurek* v. *Texas*, 428 U. S. 262, 276 (1976) (opinion of Stewart, POWELL, and STEVENS, JJ.); *Zant* v. *Stephens*, 462 U. S. 862, 879–880, 890, and n. 19 (1983).

[3] The Court does not conclude that Williams' challenge to the districtwide proportionality review undertaken by the State Supreme Court is a frivolous or even a nonsubstantial claim. Indeed, at least one justice of the Supreme Court of Louisiana has argued that the limited scope of such review does not satisfy federal constitutional standards. See *State* v. *Prejean*, 379 So. 2d 240, 249–252 (La. 1979) (Dennis, J., dissenting from denial of rehearing).

Rather, the Court concludes that the challenge does not present "an issue warranting a grant of certiorari." See *ante*, at 52. But as noted above, the Court has already granted a petition for certiorari in *Pulley* that

Second, even if a proportionality review limited to a single judicial district might eventually be held to pass constitutional muster, Williams notes that recent decisions of the Supreme Court of Louisiana have randomly applied proportionality reviews that are statewide in scope. See, *e. g.*, *State v. Moore*, 432 So. 2d 209, 225–228 (1983) (limited comparison of first-degree murder cases statewide); *State v. Narcisse*, 426 So. 2d 118, 138–139 (1983) (similar comparison between several districts rather than the customary one). The state court's failure to adopt any consistent approach in its review of capital cases, combined with its failure to offer any reasons for these different approaches, suggests that his death sentence has been imposed in a capricious and arbitrary manner. Again, at least until this Court clarifies the need for, and potential scope of, proportionality review in *Pulley*, I find it startling that the Court should allow this execution to take place.

A simple examination of the proportionality review that was undertaken in this case demonstrates its inadequacy.[4]

---

poses a question concerning the constitutionally required scope of any proportionality review. Therefore, the Court's conclusion that the claim raised by Williams is not worthy of review is directly contradicted by the Court's previous actions in *Pulley*. See also *Baldwin v. Maggio*, 704 F. 2d 1325, 1326, n. 1 (CA5 1983), in which the Court of Appeals for the Fifth Circuit recognized the similarity between the claims raised in *Pulley* and the claim raised by Williams and other condemned prisoners in Louisiana.

[4] Article 905.9 of the Louisiana Code of Criminal Procedure requires that the Supreme Court of Louisiana "review every sentence of death to determine if it is excessive" and directs the court to "establish such procedures as are necessary to satisfy constitutional criteria for review." La. Code Crim. Proc. Ann., Art. 905.9 (West Supp. 1983). Acting pursuant to that direction, the court has adopted its own Rule 28, which provides in relevant part that "[i]n determining whether the sentence is excessive the court shall determine . . . whether the sentence is disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." Louisiana Supreme Court Rule 28, § 1(c).

Moreover, the system for appellate review in Louisiana was intentionally patterned after the procedure for review authorized by the Georgia death

The review was undertaken in April 1980, when Williams'
case was on direct appeal before the Supreme Court of Loui-
siana.   The court compared the circumstances of Williams'
crime with the crimes of other capital defendants in the Nine-
teenth Judicial District for the Parish of East Baton Rouge,
La., the district or parish in which Williams was tried and
convicted.   At that time, only 28 murder prosecutions had
taken place in the district since January 1, 1976, the relevant
date under state rules on which to begin the comparison.   Of
those 28 prosecutions, only 11 resulted in convictions for
first-degree murder.   And of those 11, only 3 defendants
were sentenced to death.   Like Williams, all three were the
actual killers in a murder taking place during the perpetra-
tion of an armed robbery.   And the court conclusorily noted
that the crimes committed by the eight defendants receiving
life imprisonment had no aggravating circumstances or some
mitigating circumstances and therefore were distinguishable
from Williams' case.   But, as the state court also admitted,
Williams had no significant prior criminal record and may
have been affected by a drug-induced mental disturbance.
Therefore, the proportionality review undertaken in this
case, limited as it was to a few cases arising in a single judi-
cial district, could not ensure that similarly situated defend-
ants throughout the State of Louisiana also had received a
death sentence.

Louisiana has a total of 40 judicial districts in which a death
sentence may be imposed.   They apparently range from dis-
tricts that cover primarily rural areas to a district that covers
the urban center of New Orleans.   Yet by allowing the
Supreme Court of Louisiana to limit its proportionality review
to a particular district, the Court today sanctions a practice

penalty statute and approved by this Court in *Gregg* v. *Georgia,* 428 U. S.
153 (1976).   See *State* v. *Sonnier,* 379 So. 2d 1336, 1358 (La. 1979).   The
Georgia procedure, of course, includes a proportionality review that com-
pares a death sentence to other sentences imposed *throughout the State.*
*Gregg* v. *Georgia, supra,* at 204–206; see *supra,* at 58.

that undoubtedly results in different sentences for similarly situated defendants, dependent solely upon the judicial district in which the defendant was tried. This is the essence of arbitrary and capricious imposition of the death penalty that the Court has consistently denounced. "A constant theme of our cases . . . has been emphasis on procedural protections that are intended to ensure that the death penalty will be imposed in a consistent, rational manner." *Barclay* v. *Florida*, 463 U. S. 939, 960 (1983) (STEVENS, J., concurring in judgment). Central to these protections is a system that includes meaningful appellate review for every death sentence. See, *e. g.*, *Zant* v. *Stephens*, 462 U. S., at 875 and 876; *Gregg* v. *Georgia*, 428 U. S., at 195, 204–206. Given the existence of only one statewide death penalty statute approved by the Louisiana State Legislature, requiring that all courts and juries across the State apply uniform legal standards before imposing a death sentence, there can be no doubt of the substantiality of the constitutional question whether the State Supreme Court may apply different standards of appellate review depending on the judicial district involved.

In sum, Williams has raised a substantial claim challenging the constitutionality of his death sentence which is encompassed within the questions presented to the Court in *Pulley* v. *Harris*. Given the severity and irrevocability of the death sentence, it is shocking that the Court does not follow its normal procedures in this case. Under these procedures, the stay of execution should be left in force pending the timely filing of a petition for certiorari, and the final disposition in *Pulley*.

### III

The Court offers no defensible rationale for departing from this sensible practice.[5] Its action in this case is especially

---

[5] On several occasions, I and other Members of the Court have expressed disapproval for the " 'growing and inexplicable readiness . . . to "dispose of" cases summarily.' " *Hutto* v. *Davis*, 454 U. S. 370, 387 (1982) (BREN-

troubling because (1) it is based on the minimal filings associated with a stay application, (2) it effectively pre-empts one of the questions presented for review in *Pulley*, and (3) it apparently is an irrevocable decision that will result in Williams' execution.

Less than five weeks ago, on October 5, 1983, JUSTICE WHITE stayed the execution of a condemned prisoner who, mere hours before his execution, claimed that he had been denied due process because the Texas Court of Criminal Appeals had failed to subject his death sentence to any proportionality review. See *Autry* v. *Estelle, post*, p. 1301 (in chambers). JUSTICE WHITE concluded that Autry's execution should be stayed pending disposition of *Pulley* because the Court's decision in *Pulley* will likely have a bearing on the validity of that prisoner's last-minute claim. Since then, the full Court has refused to vacate that stay. *Post*, p. 925. Incredibly, the sensible practice followed in *Autry* has been rejected in this case because the Supreme Court of Louisiana utilized a limited proportionality review whereas in *Autry* the state court did not apply any such review. For present purposes, however, this is a distinction which should make no difference. Given the questions presented in *Pulley*, see *supra*, at 57, it is impossible to be certain that the proportionality review accorded Williams satisfies the constitutional requirements that the *Pulley* decision is intended to clarify.

It is no answer that the Court has consistently denied challenges to Louisiana's districtwide proportionality review, including Williams' own challenge to that review in his petition for certiorari on his first federal habeas. *Williams* v. *Maggio*, 463 U. S. 1214 (1983). For each of these denials, as is true of all denials of certiorari, is not a decision on the merits of the issues raised in the respective petitions. More

---

NAN, J., dissenting) (quoting *Harris* v. *Rivera*, 454 U. S. 339, 349 (1981) (MARSHALL, J., dissenting)). For the various reasons expressed in the text, this practice proves especially disturbing in this case.

important, in none of those cases did the Court's denial of certiorari involve an imminent date of execution.   In this case, by contrast, the Court's action will allow the execution of Williams to proceed to its fatal conclusion even though uncertainty overhangs the constitutional legitimacy of the process by which his death sentence was affirmed.[6]

Nor may the Court take comfort in the fact that, in the course of denying Williams' request for habeas relief, the Federal District Court conducted an abbreviated statewide proportionality review based on the published opinions of the Supreme Court of Louisiana.   Although the District Court concluded that Williams' sentence was not disproportionate, that finding is largely irrelevant to the issue raised by Williams.   The District Court's judgment regarding the proportionality of the death sentence is insufficient because it cannot substitute for the State Supreme Court, which is presumably more familiar than the federal court with the important nuances of the State's death penalty jurisprudence. Moreover, because Williams' requested remedy on habeas was a remand to the state court for a statewide proportionality review, the District Court did not have the benefit of any arguments from counsel for Williams on how that statewide review should be conducted.   That the District Court conducted a hasty proportionality review based solely on published opinions from the State Supreme Court should not be deemed constitutionally sufficient.

Finally, the Court gives insufficient weight to the potential prejudicial effect of the limited, districtwide review conducted in Williams' case.   In fact, Williams' habeas petition

---

[6] Under Louisiana law, "if any federal court . . . grants a stay of execution, the trial court shall fix the execution date at not less than thirty days nor more than forty-five days from the dissolution of the stay order."   La. Rev. Stat. Ann. § 15:567 (West Supp. 1983).   This means that Williams' execution can be rescheduled mere weeks after this Court hears oral argument in *Pulley*, at a time when it is extremely unlikely that the Court will have already rendered its decision in that case.

has identified at least two specific ways in which he has been prejudiced by a districtwide, rather than a statewide, proportionality review. First, he claims that there has never been a statewide pattern of death sentences for persons committing murder during armed robbery, especially when there was a close question whether the murder was committed with specific intent or was simply accidental. Second, Williams claims that his case presented mitigating circumstances comparable to various cases in other parts of the State which resulted in sentences of life imprisonment. These are exactly the types of disparities which a proportionality review of proper scope would discover.

The Court, therefore, plainly offers no reason for treating this case differently from any other stay application raising questions which are encompassed within a substantially similar case then pending on the Court's plenary docket. Rather, "an appeal that raises a substantial constitutional question is to be singled out for summary treatment *solely because the State has announced its intention to execute . . . before the ordinary appellate procedure has run its course.*" *Barefoot* v. *Estelle*, 463 U. S. 880, 913 (1983) (MARSHALL, J., dissenting) (emphasis in original).[7]

---

[7] At least two other claims raised by Williams also suggest that the State should not be allowed to proceed with this execution. First, as JUSTICE STEVENS notes, *ante*, p. 52, Williams has raised a serious question concerning the prosecutor's argument to the jury. That argument unduly prejudiced Williams because, by overstating the role of appellate review, it both misstated Louisiana law and allowed the jury to discount its grave responsibilities when imposing the death sentence. Unlike JUSTICE STEVENS, however, I believe *Sanders* v. *United States*, 373 U. S. 1 (1963), mandates that the case be remanded for a full hearing on this matter.

Second, Williams has alleged that exclusion for cause of jurors unequivocally opposed to the death penalty resulted in a biased jury during the guilt phase of the trial proceedings against him. The Court has previously noted that, "[i]n light of . . . presently available information," it cannot be said that such juror exclusion results in an unrepresentative jury on the issue of guilt. See, *e. g.*, *Witherspoon* v. *Illinois*, 391 U. S. 510, 516–518

## IV

By vacating the stay granted by the Court of Appeals and allowing the execution of Williams to proceed, the Court is implicitly choosing to adopt one of two wholly unacceptable alternatives. Either the Court, prior to its full consideration of *Pulley*, is pre-empting any conclusion that the Constitution mandates statewide proportionality review, or the Court is announcing that someone may be executed using appellate procedures that might imminently be declared unconstitutional. Only after full consideration and disposition of *Pulley* will the Court be in a position to determine with reasonable assurance the validity of the claims raised by Williams. I am appalled that the Court should be unwilling to let stand a stay of execution pending the clarification of this issue.

I dissent.

JUSTICE BLACKMUN, dissenting.

I would not vacate the stay granted by the United States Court of Appeals for the Fifth Circuit until this Court decides *Pulley* v. *Harris*, No. 82–1095, argued today. I share JUSTICE BRENNAN's view that the resolution of the proportionality issue presented in *Pulley* inevitably will have some bearing on the proportionality issue raised by Robert Wayne Williams. To be sure, the decision forthcoming in *Pulley* v. *Harris* may or may not be favorable to Williams. However that may be, by vacating the stay, the Court today summarily decides the issue against Williams and, to that extent, pre-empts *Pulley*.

---

(1968). See also *Bumper* v. *North Carolina*, 391 U. S. 543, 545, and nn. 5, 6 (1968). That conclusion, however, was reached 15 years ago, and recent cases and scholarship suggest that it may need to be reexamined. See, *e. g.*, *Grigsby* v. *Mabry*, 569 F. Supp. 1273 (ED Ark. 1983); Winick, Prosecutorial Peremptory Challenge Practices in Capital Cases: An Empirical Study and a Constitutional Analysis, 81 Mich. L. Rev. 1 (1982). An evidentiary hearing on this issue is clearly necessary.

It seems to me that standards of orderly procedure require that the stay of execution granted by the Fifth Circuit remain in effect until *Pulley* is decided.   I therefore dissent from what appears to be an untoward rush to judgment in a capital case.