I.
Marion Albert Pruett has been finally convicted of capital murder and sentenced to suffer death in the manner provided by law. Pruett's conviction and sentence have been affirmed on direct appeal. See Pruett v. State, 431 So.2d 1101 (Miss. 1983). His petition for rehearing has been denied.[1] In due course, Pruett sought relief via a petition for a writ of certiorari in the Supreme Court of the United States. That application was denied October 3, 1983. Pruett v. Mississippi,
___ U.S. ___, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983).
Pruett has now instituted post-conviction proceedings in this Court. Specifically, he has invoked the writ of error coram nobis [see Miss. Code Ann. § 99-35-145 (1972); Rule 38, Miss.Sup.Ct. Rules] and has asked that both his conviction and sentence be vacated. This is Pruett's last procedural gasp available under Mississippi Law.
In his petition, Pruett has asserted nineteen separate grounds, any one of which, if credited, could result in his conviction, or sentence, or both, being vacated. Under our procedure, we review Pruett's filing to determine whether it is sufficient to grant relief as a matter of law or, where factual matters are involved, whether it is sufficient to require an evidentiary hearing in the Circuit Court. Rule 38, Miss.Sup.Ct. Rules; Cf. Rule 8.07, Uniform Criminal Rules of Circuit Court Practice; Sanders v.State, 440 So.2d 278, 284-85 (Miss. 1983). In this connection, we have received excellent briefs from both the attorneys representing Pruett and from the office of the Attorney General on behalf of the state. *Page 829 
Indeed, it is appropriate that counsel be commended for the competence and professionalism with which they have presented to the Court this case which, as all know, arises out of one of the most sensationalized and emotionally charged crimes in the recent history of this state.
I have now carefully studied the papers filed in Pruett's behalf as well as those filed by the Attorney General in opposition. It is my judgment that neither Pruett's conviction nor his sentence may lawfully be disturbed. I unreservedly join in today's judgment denying as it does any relief on Marion Albert Pruett's petition for leave to file a Petition for Writ of Error Coram Nobis in the Circuit Court of Lowndes County, Mississippi.
As certain as I am that today's judgment is correct, I am of the view that much of the majority's rationale is in error. I find some of the gratuitous dicta at the end of the majority opinion unfortunate. I regard these as matters of considerable importance and for that reason, with sincerest respect for the views of my colleagues, I file this special concurring opinion.
 II.
My primary objection to the rationale employed en route to today's judgment is what I consider the Court's improper reliance upon Pruett's procedural defaults. I disagree with the majority in the methodology of its disposal of fifteen of Pruett's nineteen points.
 A.
First, the points of agreement. In his present application, Pruett has asserted four grounds that were heard on direct appeal. These are:
(1) A. Lack of Jurisdiction and Constitutional Venue;
(2) E. Use of Petitioner's Involuntary and Unconstitutionally Obtained Statement;
(3) J. Juror's Violation of Oath;
(4) K. Consideration of Improper Aggravating Circumstances.
Each of these points was assigned as error before this Court on direct appeal. Each issue was fully briefed at that time, was fully considered by the Court at that time, and was decided on its merits. Pruett v. State, 431 So.2d 1101 (Miss. 1983). Absent some compelling reason why we ought to reconsider same, and specifically absent some compelling suggestion that our original decision on one or more of these points may have been in error, Pruett ought to be — and is — collaterally estopped from relitigation of these claims.
In my concurring opinion in Edwards v. Thigpen, 433 So.2d 906
(Miss. 1983), in a similar context I wrote:
 Several issues tendered have already been fully litigated. Without doubt, there is no problem with the Court's holding that further litigation of those issues in the courts of this state has been foreclosed under notions akin to res judicata and collateral estoppel.
433 So.2d at 909.
Relitigation of issues A., E., J., and K. is properly procedurally barred; that is, we invoke a rule of procedure, to-wit: collateral estoppel, and deny Pruett relief on any of these issues. I regard this type of procedural bar as viable in post-conviction death penalty litigation.
 B.
There are two other procedural bases upon which the majority would hold that consideration of the merits of Pruett's present application is barred. First, none of the fifteen remaining points — issues B.D., F.-I., L.-S. — were raised on direct appeal. Second, seven of those fifteen points were not technically preserved by timely objection or motion in the trial court. I regard these procedural bars as inappropriate and unnecessary in post-conviction death penalty litigation.
I have on several occasions set forth my views that these types of procedural bars have at best a limited role in this type case. In Hill v. State, 432 So.2d 427, 443-451 (Miss. 1983), I explained why on direct appeal *Page 830 
these two types of procedural bars should almost never be enforced, absent a conscious waiver by the defendant at trial. InIn re Evans, 441 So.2d 520, 533 (Miss. 1983), and King v.Thigpen, 441 So.2d 1365, 1370 (Miss. 1983), I explained how, on post-conviction proceedings, these two types of procedural bars should not preclude consideration of petitioner's claims on the merits provided a cause or prejudice test be met.
I am very much aware that none of my opinions in these cases have been joined by a majority of the members of this Court.[2]
Indeed, in at least five cases within the past year this Court invoked these sorts of procedural bars to avoid a decision on the merits of one or more of a condemned prisoner-petitioner's error coram nobis application. See Wheat v. Thigpen, 431 So.2d 486
(Miss. 1983); Edwards v. Thigpen, 433 So.2d 906 (Miss. 1983);Smith v. State, 434 So.2d 212 (Miss. 1983); In re Evans,441 So.2d 520 (Miss. 1983); and King v. Thigpen, 441 So.2d 1365
(Miss. 1983).
In this context, I recognize my obligation to consider whether the point has been decided so that I am bound under notions ofstare decisis to adhere. Specifically, I have considered carefully whether the majority opinions in Wheat, Edwards,Smith, Evans and King establish a rule of law that, in allcases where a state prisoner seeks post-conviction relief, the courts of this state have no authority to consider the merits of the prisoner's claim if he either failed to raise the point on direct appeal or failed timely to preserve the point in the trial court. My reading of the majority opinions in these five cases makes it clear to me that we have no case which squarely so holds.[3]
Beyond that, it is no secret that we have cases — non-capital cases at that — which hold precisely the contrary of what the majority says is the office of these types of procedural bars. See e.g., Fondren v. State, 199 So.2d 625 (Miss. 1967); cf.Caldwell v. State, 443 So.2d 806 (Miss. 1983) (Dan M. Lee, J., dissenting); In re Evans, 441 So.2d 520 (Miss. 1983) (Robertson, J., dissenting, § II(B)).
In the final analysis, however, I consider it my duty to continue to suggest error in our use of procedural bar in these cases on fundamental policy grounds. As a matter of intuitive as well as deductive logic, the interests of justice simply are not served by what we are doing.
Having said this, I have now studied carefully the merits of Pruett's remaining fifteen points. Most present pure questions of law or at most questions that can be decided on the record now before the Court. I find each point manifestly without merit. See Rule 8.07, Uniform Criminal Rules of Circuit Court Practice;Sanders v. State, 440 So.2d 278, 284-85 (Miss. 1983); Tillerv. State, 440 So.2d 1001, 1004 (Miss. 1983). Were I writing for the Court, I would, of course, set forth with some specificity the reasons why these claims as a matter of law entitle Pruett to no relief. In the present setting, only two need be mentioned specifically.
Pruett's Point Q. is that this Court on direct appeal performed a constitutionally inadequate review of his death sentence. Here we encounter an issue substantially similar to that pending before the Supreme Court of the United States in Harris v.Pulley, 692 F.2d 1189 (9th Cir. 1982), cert. granted, ___ U.S. ___, 103 S.Ct. 1425, 75 L.Ed.2d 787 (1983).[4] *Page 831 
While I recognize that the Supreme Court could well prove me wrong, my study of the point reflects no basis for believing that our review of Pruett's sentence has in any way been deficient. I regard the matter at least as clear as it appeared to the Supreme Court of the United States in Maggio v. Williams, ___ U.S. ___, 104 S.Ct. 311, 78 L.Ed.2d 43 (1983).
Pruett's Point S. raises the familiar wolf cry of ineffective assistance of counsel. Specifically, Pruett charges that the alleged ineffectiveness of his trial counsel denied him rights secured by the Sixth and Fourteenth Amendments to the Constitution of the United States. By its very nature, of course, this issue could not at this stage of the proceedings be procedurally barred from consideration on the merits. Read v.State, 430 So.2d 832, 836-42 (Miss. 1983).
I have reviewed Point S. and the factual matters submitted in support thereof to determine whether Pruett has here stated a claim upon which relief may be granted. Compare Callahan v.State, 426 So.2d 801 (Miss. 1983) with Sanders v. State,440 So.2d 278, 284-85 (Miss. 1983); and Tiller v. State,440 So.2d 1001, 1006 (Miss. 1983). In my view, even though Pruett may prove everything he has alleged on this point he will have failed as a matter of law to show entitlement to any relief. At trial and on direct appeal[5] Pruett had the benefit of defense counsel more vigorous and competent than I have seen in any other capital murder case to come before this Court.
The effective assistance of trial counsel issue is also presently being rehashed before the Supreme Court of the United States. See Washington v. Strickland, 693 F.2d 1243 (11th Cir. [former 5th Cir., Unit B] 1982), cert. granted ___ U.S. ___, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983); United States v. Cronic,675 F.2d 1126 (10th Cir. 1982), cert. granted ___ U.S. ___, 103 S.Ct. 1182, 75 L.Ed.2d 430 (1983). Quite likely new and more precise guidelines on this troublesome issue will soon emanate from that Court. For the present, it is inconceivable to me that the Washington and Cronic cases will produce any rules which, when applied to the facts of this case (as we glean them from Pruett's present application as well as the trial record before this Court), would require a holding that at his trial Pruett was denied effective assistance of counsel.
In short, I would deny Pruett's points Q. and S. as a matter of law and on their merits, procedural niceties to the contrary notwithstanding.
 III.
There is a serious problem with our procedural bar holdings inWheat, Edwards, Smith, Evans and King that I have heretofore overlooked. This problem exists in the context of the acknowledged popular imperative for the just and efficient administration and enforcement of our capital sentencing system. It arises from our responsibility as the highest court of a sovereign *Page 832 
state vested with front line responsibility for the development of criminal constitutional rules designed to implement the Supreme Court's mandate for guided discretion capital sentencing systems. Its urgency is accentuated by growing public dissatisfaction with seemingly interminable delays in death penalty litigation, delays seemingly unrelated to service of the interests of justice.
A review of the error coram nobis applications that have come before this Court, beginning with Wheat, makes clear that they often raise the same issues, over and over. This is particularly true of constitutionally grounded issues surrounding the sentencing phase and appellate review. We fail properly to regard the interests of judicial efficiency when, instead meeting such issues head-on and authoritatively deciding them on their merits (after the full briefing we regularly receive in these matters), we hold them procedurally barred five cases in a row.[6]
Particularly is this so when we realize that we will continue to encounter the issue in practically every post-conviction petition until it is decided authoritatively on the merits either in this Court or in the Supreme Court of the United States.
Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), introduced a new era. Bifurcated trials and appellate sentence review were theretofore unheard of in Mississippi — as well as in most other jurisdictions. The seven-and-one-half years since Gregg have produced much "delay" and "confusion". As lawyers know, this often occurs in the years immediately following enunciations of a major new principle of law. See, e.g., the aftermath of Erie Railroad Co. v. Tompkins,304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and which I summarized briefly in Walters v. Inexco Oil Co., 440 So.2d 268, 272-74 (Miss. 1983), *Page 833 
and more recently the progeny of Moragne v. States Marine Lines,Inc., 398 U.S. 375, 405-408, 90 S.Ct. 1772, 1790-91, 26 L.Ed.2d 339, 359-61 (1970); and State Stove Manufacturing Company v.Hodges, 189 So.2d 113 (Miss. 1966). That process here has been more tedious than usual because human life is on the line, because "death is different". See Hill v. State, 432 So.2d 427, 444-47 (Miss. 1983) (Robertson, J., dissenting).
When this occurs, it becomes our responsibility to assist in fleshing out the new doctrine with deliberately considered holdings in individual cases as they arise. This we and our sister courts must do if the law is ever to become settled. Only when the law has become settled will we begin to make progress toward consistent achievement of the twin ends of finality and justice in death penalty litigation.
Our recent practice of invoking procedural bars in death penalty cases substantially delays the settlement of the law.
We substantially put off the day when the post-conviction review of death sentences may begin to be brought to a conclusion within a reasonable period of time. So long as major questions remain unsettled, delay and confusion — and, perhaps even more significantly — seemingly arbitrary inflictions of the death penalty — will remain the order of the day.
In the past year in Wheat, et al., we have allowed our frustration with the magnitude and burden of death penalty adjudications to lead us to shortsightedness. We cut off our noses to spite our faces. We hold an issue procedurally barred five cases running when surely common sense suggests that a carefully considered and authoritative decision on the merits just once would establish a precedent that would greatly facilitate our review of all subsequent cases. If our goal be progress toward consistent achievement of the finality and justice in death penalty litigation, our recently charted course is in need of a substantial mid-voyage correction.
 IV.
At the outset, the majority sets forth several cases describing the office of the writ of error coram nobis. We have numerous other cases which articulate the office of this writ in quite different terms. See, e.g., Windom v. State, 192 So.2d 689, 691 (Miss. 1966); Love v. State, 221 So.2d 92, 94-95 (Miss. 1969);Nelson v. Tullos, 323 So.2d 539, 543 (Miss. 1975); Phillips v.State, 421 So.2d 476, 483 (Miss. 1982). In each of these cases this Court has recognized that the writ of error coram nobis is appropriate in case of petitions such as that filed by Marion Albert Pruett. These cases hold that the writ may be used not only to bring to the Court's attention some factual matter not appearing of record but also as this state's post-conviction procedure for allowing collateral attack based upon alleged constitutional defects in the petitioner's conviction or sentence. See King v. Cook, 287 F. Supp. 269, 271-272 (N.D.Miss. 1968).
In a sense, the majority is correct in its restricted view of the office of the writ of error coram nobis. Historically, no one ever dreamt of that writ being used as a post-conviction procedural vehicle for consideration of alleged constitutional infirmities in a prisoner's conviction or sentence. In the courts of other states and in the federal courts, the writ of habeas corpus has been used for this purpose. A decade ago, however, this Court clung to a restrictive construction of the writ of habeas corpus (see, e.g., Keller v. Romero, 303 So.2d 481, 483-84 (Miss. 1974)), and ultimately took the then (historically) dubious step of declaring the writ of error coram nobis as this state's post-conviction form of action for raising constitutional questions regarding a prisoner's conviction or sentence. SeeNelson v. Tullos, 323 So.2d 539, 543 (Miss. 1975); see also,King v. Cook, supra.
Forty years ago, in Anderson v. Buchanan, 292 Ky. 810,168 S.W.2d 48 (1943), the Supreme Court of Kentucky wrote "The writ of coram nobis appears to be the wild ass of the law which the courts cannot control." 292 Ky. at 822, 168 S.W.2d at *Page 834 
55.[7] This view of the writ was justifiably held decades before Mississippi began experimenting with it. See King v.Cook, supra. Suffice it to say that, at least among those familiar with the past twenty years' experience under Mississippi's bastardized version of this "wild-ass", the consensus is growing that the writ ought be gelded, if not forever interred. See e.g., Edwards v. Thigpen, 433 So.2d 906, 907 fn. 1 (Miss. 1983).
In this context, I welcome as a breath of fresh air the Attorney General's insistence that this (and presumably all subsequent) post-conviction collateral attack be treated as procedurally commenced under Rule 8.07 of our Uniform Criminal Rules of Circuit Court Practice. I regard our adoption of Rule 8.07 as effecting a coalescence of all post-conviction relief efforts into a single procedure. Edwards v. Thigpen,433 So.2d 906, 907 fn. 1 (Miss. 1983); Sanders v. State, 440 So.2d 278, 282 fn. 1 (Miss. 1983); Tiller v. State, 440 So.2d 1001 (Miss. 1983). Here, as in civil actions, it simply makes no sense that we have neither more nor less than one form of action. Compare Rule 2, Miss.R.Civ.P.
I would adopt the Attorney General's view that we begin by assuming that this is a proceeding initiated under Rule 8.07 and go from there. In this view the description of the office of the writ of error coram nobis set forth at the outset of the majority opinion becomes irrelevant.
 V.
On page 827, the majority opinion, for reasons that wholly escape me, castigates present counsel for Marion Albert Pruett. I take exception to those comments.
Representation of one charged with a capital crime is one of the most serious — and most unpleasant — responsibilities that may be visited upon a member of the bar. When the prisoner has already been convicted and sentenced and that sentence has been affirmed on direct appeal, acceptance of the case by new counsel becomes doubly onerous. They operate under severe time constraints coupled with the certain knowledge that their client's life is on the line.[8] Yet present counsel for Pruett have taken on this burden and have performed it with notable competence and professionalism. Indeed, it is because of the competence with which the matter has been presented by counsel for Pruett that I can be satisfied in my own mind that the vote I cast in this case is a proper one.
It is unfortunate that the majority opinion characterizes Pruett's present counsel as
 "Johnny-Come-Latelies" who, in the opinion of this writer, end up causing their client more grief than relief.
(Page 827). The statement becomes all the more anomalous when it is remembered that in at least seven prior Mississippi death penalty cases, which reached the procedural stage Pruett's case is now at, orders were subsequently obtained vacating the death sentence. See Washington v. Watkins, 655 F.2d 1346 (5th Cir. 1981); Jordan v. Watkins, 681 F.2d 1067 (5th Cir. 1982), clarified sub nom. Jordan v. Thigpen, 688 F.2d 395 (5th Cir. 1982); Bell v. Watkins, 692 F.2d 999 (5th Cir. 1982); Voylesv. Watkins, 489 F. Supp. 901 (N.D. Miss. 1980); Irving v.Hargett, 518 F. Supp. 1127 (N.D.Miss. 1981); Reddix v.Thigpen, 554 F. Supp. 1212 (S.D.Miss. 1983); Jones v. Thigpen,555 F. Supp. 870 (S.D.Miss. 1983).
In the context of my certain knowledge of my own responsibilities in this last gasp stage of Pruett's case before the Courts of the State of Mississippi,[9] I am grateful to *Page 835 
his present counsel. For one, I am not offended that new points have been raised not presented on direct appeal. Rather, I compliment counsel for the zeal and, again, the professionalism with which the matter has now been presented. Before I vote finally to condemn a fellow child of God to death in the gas chamber, I want to be as certain as is humanly possible that his conviction and sentence are consistent with the Constitution of the United States and with the Constitution and laws of the state of Mississippi. Timid counsel are of no help in this regard.
I would recall the words of Justice Hawkins dissenting inJohnson v. State, 416 So.2d 383 (Miss. 1982):
 Each generation of free men owes a debt of gratitude it can never repay to those courageous lawyers in our history who have risked their livelihood, their liberty, and some even their lives in defending an unpopular cause, or an accused charged with a loathsome or heinous offense.
416 So.2d at 396. These words apply to post-conviction counsel as well as trial and appellate counsel.
I regard the representation afforded Marion Albert Pruett by his present counsel — as well as the representation afforded him by trial and appellate counsel — to be within the spirit of these words of Justice Hawkins. In a word, I regard as heroic the performance by all counsel for Pruett at all stages of the proceedings against him. See generally my recent article, TheLawyer as Hero, 53 Miss.L.J. 431 (1983). Lawyers who so serve are deserving of our gratitude.
PATTERSON, C.J., and DAN M. LEE and PRATHER, JJ., join in this opinion.
[1] After careful study of the matter while pending on direct appeal, I concluded without serious reservations that Pruett had been convicted and sentenced consistent with the Constitution of the United States and consistent with the Constitution and laws of the State of Mississippi. Accordingly I voted with a majority of the Court to affirm and subsequently to deny rehearing.
[2] My opinion in the Hill case was joined by Chief Justice Patterson. My opinion in Evans was joined by Justices Hawkins and Prather. My opinion in King was joined by Chief Justice Patterson and by Justices Hawkins and Prather. There is, of course, no reason to repeat my previous discourses on this subject. I refer here to my opinions in Hill, Evans and King,
and I trust it is apparent that what I have said in those cases has equal application here.
[3] I have analyzed most of our recent cases in my dissenting opinion in Evans, 441 So.2d at 528. That discussion should be deemed incorporated here by reference.
[4] For a summary of the issues pending in Harris, and the application of their pendency to specific cases, compare and contrast Autry v. Estelle, 464 U.S. ___, 104 S.Ct. 20, 78 L.Ed.2d 1 (1983) (White, J., in Chambers) with Maggio v.Williams, ___ U.S. ___, 104 S.Ct. 311, 78 L.Ed.2d 43 (1983); see also, Balmer, The Question of Proportionality, 70 A.B.A.Journ. 54 (1984).
[5] On direct appeal Pruett's former counsel assigned only four errors while on the instant application new counsel have raised nineteen points. This in no way suggests inadequacy of counsel on direct appeal. It is a tried and proven effective appellate tactic to concentrate on a small number of "strong" issues. Successful appellate counsel routinely eschew assignment of a plethora of errors. They wish to avoid deflecting the Court's attention from the appellant's strong points. Common sense informs appellate counsel that assertion of frivolous points may undercut one's credibility on the point or two that may have merit.
Pruett's counsel on direct appeal chose to concentrate on the issues of jurisdiction and a juror's alleged violation of his oath. Clearly, these were Pruett's strongest points. They were competently briefed and forcefully argued. On the latter point, Pruett even picked up two dissenting votes. Pruett v. State,supra, 431 So.2d at 1110-1111. Assuming a constitutional right to effective counsel on direct appeal, I regard that Pruett has enjoyed that right.
As I have said elsewhere, I appreciate present counsel's competence and thoroughness in bringing to our attention fifteen new points. I regard this view as wholly consistent with the proposition that Pruett had effective assistance of counsel on direct appeal.
[6] To illustrate the point stated above, consider the following:
(a) Pruett's Point M urges that improper jury instructions were given at the sentencing phase of his trial. The majority refuses to address the merits of the claim on grounds that it is procedurally barred. In at least four of our 1983 post-conviction death penalty decisions, we have been presented with similar, if not legally identical, arguments that improper jury instructions were given at the sentencing phase of a capital murder trial. Today, for the fifth consecutive time, we hold consideration of the merits of this issue barred by the petitioner's procedural defaults either at trial or on direct appeal. See Wheat v.Thigpen, supra, 431 So.2d at 488; Edwards v. Thigpen, supra,
433 So.2d at 908; In Re Evans, supra, 441 So.2d at 522; Kingv. Thigpen, supra, 441 So.2d at 1371. We know that there are dozens of capital murder cases yet to be heard in this Court, in each of which if affirmed on direct appeal we may be certain that post-conviction proceedings will be brought. We know that in a substantial number of these the very same issues regarding jury instructions at the sentencing phase will be raised. To me, it seems appropriate and efficient that we consider and decide the issue on its merits.
(b) Pruett's Point N urges that improper closing arguments were given at the sentencing phase of his trial. The majority refuses to address the merits of the claim on the grounds that it is procedurally barred. In at least four of our 1983 post-conviction death penalty decisions, we have been presented with similar, if not legally identical, arguments. Today, again, for the fifth consecutive time, we hold consideration of the merits of this issue barred by the petitioner's procedural defaults either at trial or on direct appeal. See Wheat v. Thigpen, supra, 431 So.2d at 488; Edwards v. Thigpen, supra, 433 So.2d at 908;Smith v. State, supra, 434 So.2d at 216; King v. Thigpen,supra, 441 So.2d 1365. Again it would seem appropriate and efficient to consider and decide the issue on its merits.
(c) Pruett's Point P urges failure to require an adequate pre-sentence report during the sentencing phase of his trial. Again, the majority refuses to address the merits of the claim on grounds that it is procedurally barred. In at least two of our 1983 post-conviction death penalty decisions, we have been presented with similar, if not legally identical, arguments regarding the alleged failure to require an adequate pre-sentence report during the sentencing phase of a capital murder trial. Today, for the third time, we hold consideration of the merits of this issue barred by the petitioner's procedural defaults either at trial or on direct appeal. See Smith v. State, supra, 434 So.2d at 217-218; and In re Evans, supra, 441 So.2d at 523.
(d) Pruett's Point Q urges alleged inadequate appellate review of the death sentence imposed upon him. Today, for the fourth time within the past year, we hold consideration of the merits of this issue barred by the petitioner's procedural defaults either at trial or on direct appeal. See Smith v. State, supra, 434 So.2d at 218; In re Evans, supra, 441 So.2d at 523.
[7] The Kentucky Court's view receives information elaboration in McPherson, Coram Nobis: The Wild Ass of the Law, 11 Loyola L.Rev. 100 (1962).
[8] The only persons who would question the substantiality of these pressures — which are unlike any other a lawyer encounters — are those who have never experienced them.
[9] I am well aware of the probability that Pruett will seek relief in the courts of the United States via federal habeas corpus. 28 U.S.C. § 2254. As I have urged elsewhere, however, I insist that it is our responsibility to decide these cases as a true court of last resort, as though there were no other court, and as though, if we affirmed, the sentence of death would surely be executed.