444 So.2d 819 (1984)
Marion Albert PRUETT
v.
Morris THIGPEN, Commissioner, Mississippi Department of Corrections, etc.
No. 54000.
Supreme Court of Mississippi.
January 11, 1984.
Rehearing Denied January 25, 1984.
*822 William Sebastian Moore, Jackson, for appellant.
Bill Allain, Atty. Gen. by William S. Boyd, III, Sp. Asst. Atty. Gen., Jackson, for appellee.
En banc.
BOWLING, Justice, for the Court:
This opinion involves consideration by the Court of a Petition by Marion Albert Pruett for Leave to File a Petition for Writ of Error Coram Nobis in the Circuit Court of Lowndes County, Mississippi.
There is no need to dwell at length on the principles of law necessary to be considered by this Court in determining whether or not Petitioner's application should be sustained or denied. We have clearly announced the principles before us in a number of cases, both recently and in the past. See Smith v. State, 434 So.2d 212 (Miss. 1983); Edwards v. Thigpen, 433 So.2d 906 (Miss. 1983); Wheat v. Thigpen, 431 So.2d 486 (Miss. 1983); Callahan v. State, 419 So.2d 165 (Miss. 1982); Holloway v. State, 261 So.2d 799 (Miss. 1972); Botts v. State, 210 So.2d 777 (Miss. 1968); and Corry v. Buddendorf, 98 Miss. 98, 54 So. 84 (1911).
In Callahan, supra, we adopted the language in In Re Broome's Petition, 251 Miss. 25, 168 So.2d 44 (1964), by saying the following:
The general scope of a petition for writ of error coram nobis, or motion in the nature thereof, is to bring before a court a judgment previously rendered by it, for the purpose of review or modification. There must be some error of fact and not of law affecting substantially the validity and regularity of the proceedings, which was not brought into issue at the trial. Such motion or petition is an extraordinary and residual remedy to correct or vacate a judgment on facts or grounds not appearing on the face of the record, not available by appeal or otherwise, and not discovered until after rendition of the judgment, without fault of the party seeking relief. It is an attack on a judgment of conviction, valid on its face, but defective by reason of facts outside the record, which deprived accused without fault on his part of the constitutional right to a fair trial.
In the recent case of Smith v. State, supra, we stated:
We are compelled to note that in the instant case, as is all too often the case in similar post-conviction relief efforts which come before this Court, the petitioner is in actuality merely seeking to relitigate his case. Such is not the proper function of post-conviction relief proceedings in Mississippi. The fair and *823 orderly administration of justice dictates that a person accused of a crime be afforded the opportunity to present his claims before a fair and impartial tribunal. It does not require that he be given multiple opportunities to "take a bite at the apple." Likewise, the orderly administration of justice does not require this Court to "lead a defendant by the hand" through the criminal justice system. It is this Court's responsibility to provide a meaningful opportunity for defendant to raise his claims and have them adjudicated.
In Botts v. State, supra, we said:
The function of a writ of error coram nobis is to bring to the court's attention some matter or fact which does not appear on the face of the record which was unknown to the court or the parties at the time, and which, if known, and properly presented, would have prevented the rendition of the original judgment.
In Holloway v. State, supra, we filed the following:
Moreover, if there was prejudice resulting from the "show up" or "line up," the facts and circumstances were known to petitioner and petitioner's present objection should have been raised at the trial. No such proposition was advanced or submitted to the trial court, either as a pre-trial matter or in the course of the trial. Nor was it assigned as a ground in petitioner's motion for a new trial. A defendant in a criminal trial may not deliberately hold back matters known to him at the time of his trial until after the affirmance of his conviction and then, for the first time, use them to begin the whole process all over again.
Regarding matters previously litigated, we stated in Edwards v. State, 433 So.2d 906 (Miss. 1983), the following:
The present issue is contended to be focusing on the inflammatory and prejudicial remarks of the prosecution. At this point it should be noted that if the issue was raised on appeal then it has been previously litigated and therefore is barred from consideration in the present proceedings. If it were not raised on appeal, then the petitioner has accepted the trial court's determination of the issue. Analysis for the petitioner's ground of relief show that it was not raised on direct appeal. Objection was made at trial to the remarks of the district attorney, but the failure to specifically assign such as error in the direct appeal before this court resulted in petitioner's acceptance of the trial court's determination of this issue; therefore it is now barred.
Petitioner, Marion Albert Pruett, was convicted on April 8, 1982, in the Circuit Court of Lowndes County [after change of venue] of the crime of capital murder and on that day concluding a bifurcated trial, the jury returned a verdict sentencing petitioner to death. The appeal to this Court resulted in the cause being affirmed on February 23, 1983. Pursuant to rules of this Court, petitioner filed his petition for a rehearing and this petition was denied on March 16, 1983. Thereafter petitioner filed a petition for writ of certiorari with the United States Supreme Court. On October 3, 1983, that court denied certiorari. Pruett v. Mississippi, ___ U.S. ___, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983).
Using the standards and principles set up by this and other courts to consider the contentions, constitutional and otherwise, of petitioner, we hereafter consider each separately under the capital letter headings set out in the petition.

A.

LACK OF JURISDICTION AND CONSTITUTIONAL VENUE.
The basic contention of petitioner under this point is that the Mississippi court lacked jurisdiction to prosecute petitioner for the crime of capital murder as it occurred in two different states. The primary answer to this contention is the original opinion by this Court on the appeal here. The question was fully and adequately presented and fully briefed and argued. This Court found no merit to the contention of appellant there and the Court *824 fully set out the authorities for its conclusion. As stated, petitioner filed a petition for rehearing and in that petition made absolutely no request for the court to change its opinion. Both for this reason and the original opinion of this Court, we hold that the question is res judicata. It has been litigated and the decision on this question is final and further litigation thereon is barred. Callahan v. State, supra; Edwards v. Thigpen, supra; Wheat v. Thigpen, supra; and Smith v. State, supra.

B.

DENIAL OF FAIR TRIAL DUE TO COMMUNITY PREJUDICE.
Petitioner was indicted for capital murder in the Circuit Court of the First Judicial District of Hinds County, Mississippi. This is the most populous county in the state and includes the state capital of Mississippi. Lowndes County, with the principal city of Columbus, is in the north-east section of the state, far away from Hinds County, and usual Hinds County publicity. On motion of petitioner the lower court granted him change of venue from Hinds County to Lowndes County. Petitioner now attempts to put the trial court in error for not again, on the day of the beginning of the trial, changing the venue into another county. In the first place, there was no request whatever for such a change. No objection was made to trying the case in Lowndes County and on the other hand, the record clearly reveals complete acquiescence by the petitioner. This claim by petitioner was not raised in the trial court and was not raised on appeal to this Court and is barred from consideration now under the petition.

C.

FAILURE TO EXCUSE FOR CAUSE A JUROR PREJUDICED AGAINST 
PETITIONER.
It is contended that the juror in question should have been excused by the court for cause. This occurred during the voir dire examination. This question of law was not raised on appeal, and cannot now be considered. Petitioner, by his actions, accepted the ruling of the trial court.

D.

THE DEATH QUALIFICATION OF PETITIONER'S JURY.
The record is clear that petitioner accepted the court's ruling on selection of jurors who could be fair and impartial and particularly the juror Ferguson mentioned under this point. Any error thought to be had at that time or any alleged error now was not preserved and not presented on appeal. It is readily seen by the record that whether or not to excuse this juror peremptorily was a judgment call and petitioner did not see fit, either through himself as his attorney, or his attorney advisers, to preserve a claim on this point.

E.

USE OF PETITIONER'S INVOLUNTARY AND UNCONSTITUTIONALLY OBTAINED 
STATEMENT.
All contentions under this point were assigned on appeal to this Court and fully, fairly and adequately considered by the Court and the decision thereon appears in the Court's opinion with a complete discussion of the issues. There was a full, complete and long hearing on this contention prior to petitioner's trial. The matter was fully litigated both in the lower court and in this court and decided against petitioner. Our decision is res judicata on any request for reconsideration for the same reasons previously given.

F.

UNCONSTITUTIONAL USE OF UNRELATED BAD ACTS.
The record made in the lower court reveals that prior to indictment the trial judge had petitioner brought before him and questioned him extensively about legal representation. [Trial record pp. 4-16]. *825 Petitioner frequently refers to the trial record, and therefore presumes that we have the privilege of doing the same. The entire record reveals that from the outset, petitioner insisted on being his attorney during all proceedings. The law and all options granted petitioner, constitutionally and otherwise, were fully explained to petitioner. He was also questioned as to his experience in trial advocacy. Petitioner related specific instances of cases in which he had represented himself under criminal charges. He even stated that he was such a successful attorney, that one of his cases tried by him alone, resulted in a mistrial. He stated that he had had access for many years to a federally subsidized law library while serving time in detention centers. He stated he was thoroughly familiar as to the manner in which his defense should be conducted.
Petitioner took the stand and testified on the sentencing phase of the trial and reiterated when he was specifically asked, "You are your own attorney, are you not?" and he answered, "Yes, sir, I am." Further, "You are testifying here in court voluntarily as your own attorney, is that right?" Petitioner answered "Yes, sir, I am." [R. 931]
On final argument, the leading "legal adviser" appointed at the petitioner's request, in discussing petitioner's testimony, stated to the court and jury that "the fact of the matter is that he (petitioner) said many things today without advice from counsel. He acts as his own counsel most of the time in certain areas."
Petitioner therefore is bound by his own actions. The trial court on October 29, 1981, long before the trial on April 1982, at a time when the record clearly shows petitioner to have been without the use of any drugs of any kind and a very intelligent person, fully advised petitioner of his right to have appointed counsel. There are many pages in the record where the trial judge went further then required to insure that petitioner fully understood his rights. With this full understanding, petitioner insisted on representing himself as his own attorney but requested that "legal advisors" be appointed to assist him. Never did petitioner change from this stand. As shown above, he reaffirmed this during his own testimony on the stand and it was reaffirmed by one of his three competent, experienced and completely qualified "legal advisors" during the closing argument. It is evident from the record that petitioner was an intelligent person. He understood everything that was said to him and all proceedings.
Petitioner can not now complain that he, as his own attorney, at his insistence, failed to preserve a possible appeal claim. He did not preserve any claim under this section of his petition. There is no indication of any request by him for advice from his legal advisors. He did not raise any such claim on appeal; and he is both barred and estopped from raising such claims here at this time. [See authorities hereinbefore set out.]

G.

USE OF INFLAMMATORY PHOTOGRAPHS.
Petitioner claims the application for the writ should be granted because of the introduction of certain photographs of the victim's remains. We first note that neither petitioner, as his own attorney, nor any of his three competent legal advisors, raised this question on appeal. We held as a fact in discussing the cause on appeal, that there was no contention or indication that petitioner was mentally incompetent at any time and that petitioner was a very intelligent and crafty individual from a study of the record. Under all authorities, the trial court cannot be put in error regarding any contention under this point.

H.

IMPROPER CLOSING ARGUMENT  GUILT  INNOCENCE.
We adopt the language set out above under contention G.

*826 I.

DENIAL OF A FAIR TRIAL  GUILT  INNOCENCE.
Under this contention we adopt the language hereinbefore set out under claim G.

J.

JUROR'S VIOLATION OF OATH.
The contention under this section was assigned as error on appeal to this Court and was fully discussed in the Court's opinion giving an explanation as to why the contention was not reversible error. We concluded that in addition to being no legal error, that if any person would ever change his mind regarding a prior opinion against the death penalty in any case, this was the case for that change to be made. The claim was fully argued and considered on appeal and the opinion of this Court affirming the cause bars relitigation.

K.

CONSIDERATION OF IMPROPER AGGRAVATING CIRCUMSTANCES.
Petitioner claims error in the admission of a videotaped interview of petitioner while he was incarcerated. This claim was presented on appeal to this Court and fully and finally decided by the Court in its opinion affirming the cause. The claim is res judicata and cannot be reconsidered in the posture claimed.

L.

IMPROPER LIMITATION OF TESTIMONY BY AND CROSS EXAMINATION OF 
MITIGATING WITNESSES.
Under this point petitioner complains of rulings during the testimony of witness Norma Jean Gammill. Neither petitioner, as his own attorney, nor his three competent advisors, presented any claim on appeal regarding the witness' testimony. A consideration of any errors in that testimony is completely forbidden under our standards hereinbefore set out in considering petitions for writs of error coram nobis.

M.

IMPROPER INSTRUCTIONS AND IMPROPER JURY FINDINGS AT SENTENCING.
As hereinbefore discussed, a consideration of the allegations under this section is not proper under the requirements and standards set up by authorities heretofore cited.

N.

IMPROPER CLOSING ARGUMENT  SENTENCING.
Neither appellant, as his own attorney, nor his legal advisors, preserved any alleged irregularities or errors in closing arguments, and no claim of such has heretofore been made either in the lower court or on appeal to this Court. The allegations of the petitioner under this point prohibit consideration under the authorities hereinbefore cited.

O.

DENIAL OF FUNDAMENTALLY FAIR SENTENCING HEARING.
Here we adopt the finding set out under section L. above.

P.

INADEQUATE SENTENCING REPORT.
In addition to the finding under section L above, the opinion of this Court on initial appeal clearly stated that we had considered all facets of the cause and everything in the entire record as required by statute. Any claim under this point is barred.

Q.

INADEQUATE APPELLATE REVIEW.
Here we adopt the ruling in section P. above.

*827 R.

DISCRIMINATORY APPLICATION OF DEATH PENALTY.
It is first noted that the material attached to the petition and propounded under this point is inapplicable to petitioner's contention here. By its terms, the courts of Mississippi are condemned because of discrimination against blacks in death penalty cases. Statistics reveal that this is not an accurate statement. Petitioner is white; his victim was white. Petitioner's contention under this point is ridiculous. In addition, the entire contention is barred. No such contention whatever was made in the lower court, or preserved on appeal to this Court, or argued or presented to this Court for decision.

S.

INEFFECTIVE ASSISTANCE OF COUNSEL.
Here we adopt what we said in section F. No person, either layman, lawyer or a member of the judiciary, could contend that under the record in this case, petitioner did not have every opportunity to have effective assistance of counsel. He intelligently described to the trial court before indictment about prior cases he had defended alone, some of them successfully, and explained in detail his knowledge of the law and where he received that knowledge. Throughout, as hereinbefore stated, he contended that he was his own attorney. To ignore this now would make a mockery of the judicial system, both state and federal. It would permit "sandbagging" by any defendant charged with any crime.
Furthermore, it is evident after this Court's careful study of the ten volumes of the record, that petitioner's advisory attorneys insured that petitioner received every benefit legally possible. Under the statutory mandates, this Court is required to review all death penalty cases to the fullest extent, regardless of written assigned errors. We found as a fact as shown by the opinion that petitioner's advisory attorneys were highly competent, having a good reputation as trial attorneys in criminal cases, and that the securing of more competent and experienced attorneys would have been hard to do.
The contentions under this section of the petition do not make any allegations that petitioner, as his own attorney, requested advice from his experienced trial advisors.
Petitioner now attempts to secure relief from the written opinion of an alleged expert psychologist whose opinion admittedly was based on letters from petitioner's present attorneys. There was no contention made throughout the trial of the appeal in any manner that petitioner, was is or ever had been mentally incompetent. He cannot now so contend.
We carefully have studied each contention of petitioner alleging that his "attorneys" were ineffective in a number of principal contentions under the application for writ of error coram nobis. Petitioner, as his own attorney, made no contention on appeal to this court originally regarding any incompetence of his three court-appointed legal assistants. He cannot do so now.
We are constrained to observe that those who are now propounding 123 invalid contentions before this Court to allow petitioner to play games with the Court system would have better served petitioner to have appeared at the outset and placed themselves in the trenches at the lower court and appellate court level. We further observe that even though these "Johnny-come-lately" attorneys attempted to secure relief from the United States Supreme Court by way of certiorari, they were not successful in doing any more before that Court than petitioner had done prior to his conviction being affirmed.
It is obvious that these "Johnny-Come-Latelies" who, in the opinion of this writer, end up causing their client more grief than relief. As stated by United States Supreme Court Chief Justice Burger in Sullivan v. Wainwright, ___ U.S. ___, 104 S.Ct. 290, 78 L.Ed.2d 248:

*828 The arguments so often advanced by the dissenters that capital punishment is cruel and unusual is dwarfed by the cruelty of ten years on death row inflicted upon this guilty defendant by lawyers seeking to turn the administration of justice into the sporting contest that Roscoe Pound denounced three-quarters of a century ago.
The sporting contest referred to by Chief Justice Burger has now begun in the case involving petitioner, which resulted from one of the most heinous and brutal murders that has ever been presented to a jury in any state. We cannot be accused of judging his actions, as he voluntarily, as his own attorney, got on the stand under oath and described every gruesome detail of his murderous acts. Complete guilt was admitted.

T.

RELIEF REQUESTED.
As hereinbefore discussed, we find that none of the claims of petitioner under his application for Writ of Error Coram Nobis are legally allowable claims under the guidelines set out in the authorities hereinbefore discussed and the requirements of those authorities. We, therefore, deny the Application for Leave to File a Petition for Writ of Error Coram Nobis.
APPLICATION FOR LEAVE TO FILE PETITION FOR WRIT OF ERROR CORAM NOBIS, DENIED.
Execution of Petitioner, Marion Albert Pruett, in the manner prescribed by law, shall be hereby reset for Wednesday, February 1, 1984.
WALKER and BROOM, P.JJ., and ROY NOBLE LEE and HAWKINS, JJ., concur.
PATTERSON, C.J., concurs with result reached by both BOWLING and ROBERTSON, JJ.
ROBERTSON, J., PATTERSON, C.J., and DAN M. LEE and PRATHER, JJ., specially concur.
ROBERTSON, Justice, specially concurring:

I.
Marion Albert Pruett has been finally convicted of capital murder and sentenced to suffer death in the manner provided by law. Pruett's conviction and sentence have been affirmed on direct appeal. See Pruett v. State, 431 So.2d 1101 (Miss. 1983). His petition for rehearing has been denied.[1] In due course, Pruett sought relief via a petition for a writ of certiorari in the Supreme Court of the United States. That application was denied October 3, 1983. Pruett v. Mississippi, ___ U.S. ___, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983).
Pruett has now instituted post-conviction proceedings in this Court. Specifically, he has invoked the writ of error coram nobis [see Miss. Code Ann. § 99-35-145 (1972); Rule 38, Miss.Sup.Ct. Rules] and has asked that both his conviction and sentence be vacated. This is Pruett's last procedural gasp available under Mississippi Law.
In his petition, Pruett has asserted nineteen separate grounds, any one of which, if credited, could result in his conviction, or sentence, or both, being vacated. Under our procedure, we review Pruett's filing to determine whether it is sufficient to grant relief as a matter of law or, where factual matters are involved, whether it is sufficient to require an evidentiary hearing in the Circuit Court. Rule 38, Miss.Sup.Ct. Rules; Cf. Rule 8.07, Uniform Criminal Rules of Circuit Court Practice; Sanders v. State, 440 So.2d 278, 284-85 (Miss. 1983). In this connection, we have received excellent briefs from both the attorneys representing Pruett and from the office of the Attorney General on behalf of the state. *829 Indeed, it is appropriate that counsel be commended for the competence and professionalism with which they have presented to the Court this case which, as all know, arises out of one of the most sensationalized and emotionally charged crimes in the recent history of this state.
I have now carefully studied the papers filed in Pruett's behalf as well as those filed by the Attorney General in opposition. It is my judgment that neither Pruett's conviction nor his sentence may lawfully be disturbed. I unreservedly join in today's judgment denying as it does any relief on Marion Albert Pruett's petition for leave to file a Petition for Writ of Error Coram Nobis in the Circuit Court of Lowndes County, Mississippi.
As certain as I am that today's judgment is correct, I am of the view that much of the majority's rationale is in error. I find some of the gratuitous dicta at the end of the majority opinion unfortunate. I regard these as matters of considerable importance and for that reason, with sincerest respect for the views of my colleagues, I file this special concurring opinion.

II.
My primary objection to the rationale employed en route to today's judgment is what I consider the Court's improper reliance upon Pruett's procedural defaults. I disagree with the majority in the methodology of its disposal of fifteen of Pruett's nineteen points.

A.
First, the points of agreement. In his present application, Pruett has asserted four grounds that were heard on direct appeal. These are:
(1) A. Lack of Jurisdiction and Constitutional Venue;
(2) E. Use of Petitioner's Involuntary and Unconstitutionally Obtained Statement;
(3) J. Juror's Violation of Oath;
(4) K. Consideration of Improper Aggravating Circumstances.
Each of these points was assigned as error before this Court on direct appeal. Each issue was fully briefed at that time, was fully considered by the Court at that time, and was decided on its merits. Pruett v. State, 431 So.2d 1101 (Miss. 1983). Absent some compelling reason why we ought to reconsider same, and specifically absent some compelling suggestion that our original decision on one or more of these points may have been in error, Pruett ought to be  and is  collaterally estopped from relitigation of these claims.
In my concurring opinion in Edwards v. Thigpen, 433 So.2d 906 (Miss. 1983), in a similar context I wrote:
Several issues tendered have already been fully litigated. Without doubt, there is no problem with the Court's holding that further litigation of those issues in the courts of this state has been foreclosed under notions akin to res judicata and collateral estoppel.
433 So.2d at 909.
Relitigation of issues A., E., J., and K. is properly procedurally barred; that is, we invoke a rule of procedure, to-wit: collateral estoppel, and deny Pruett relief on any of these issues. I regard this type of procedural bar as viable in post-conviction death penalty litigation.

B.
There are two other procedural bases upon which the majority would hold that consideration of the merits of Pruett's present application is barred. First, none of the fifteen remaining points  issues B.D., F.-I., L.-S.  were raised on direct appeal. Second, seven of those fifteen points were not technically preserved by timely objection or motion in the trial court. I regard these procedural bars as inappropriate and unnecessary in post-conviction death penalty litigation.
I have on several occasions set forth my views that these types of procedural bars have at best a limited role in this type case. In Hill v. State, 432 So.2d 427, 443-451 (Miss. 1983), I explained why on direct appeal *830 these two types of procedural bars should almost never be enforced, absent a conscious waiver by the defendant at trial. In In re Evans, 441 So.2d 520, 533 (Miss. 1983), and King v. Thigpen, 441 So.2d 1365, 1370 (Miss. 1983), I explained how, on post-conviction proceedings, these two types of procedural bars should not preclude consideration of petitioner's claims on the merits provided a cause or prejudice test be met.
I am very much aware that none of my opinions in these cases have been joined by a majority of the members of this Court.[2] Indeed, in at least five cases within the past year this Court invoked these sorts of procedural bars to avoid a decision on the merits of one or more of a condemned prisoner-petitioner's error coram nobis application. See Wheat v. Thigpen, 431 So.2d 486 (Miss. 1983); Edwards v. Thigpen, 433 So.2d 906 (Miss. 1983); Smith v. State, 434 So.2d 212 (Miss. 1983); In re Evans, 441 So.2d 520 (Miss. 1983); and King v. Thigpen, 441 So.2d 1365 (Miss. 1983).
In this context, I recognize my obligation to consider whether the point has been decided so that I am bound under notions of stare decisis to adhere. Specifically, I have considered carefully whether the majority opinions in Wheat, Edwards, Smith, Evans and King establish a rule of law that, in all cases where a state prisoner seeks post-conviction relief, the courts of this state have no authority to consider the merits of the prisoner's claim if he either failed to raise the point on direct appeal or failed timely to preserve the point in the trial court. My reading of the majority opinions in these five cases makes it clear to me that we have no case which squarely so holds.[3]
Beyond that, it is no secret that we have cases  non-capital cases at that  which hold precisely the contrary of what the majority says is the office of these types of procedural bars. See e.g., Fondren v. State, 199 So.2d 625 (Miss. 1967); cf. Caldwell v. State, 443 So.2d 806 (Miss. 1983) (Dan M. Lee, J., dissenting); In re Evans, 441 So.2d 520 (Miss. 1983) (Robertson, J., dissenting, § II(B)).
In the final analysis, however, I consider it my duty to continue to suggest error in our use of procedural bar in these cases on fundamental policy grounds. As a matter of intuitive as well as deductive logic, the interests of justice simply are not served by what we are doing.
Having said this, I have now studied carefully the merits of Pruett's remaining fifteen points. Most present pure questions of law or at most questions that can be decided on the record now before the Court. I find each point manifestly without merit. See Rule 8.07, Uniform Criminal Rules of Circuit Court Practice; Sanders v. State, 440 So.2d 278, 284-85 (Miss. 1983); Tiller v. State, 440 So.2d 1001, 1004 (Miss. 1983). Were I writing for the Court, I would, of course, set forth with some specificity the reasons why these claims as a matter of law entitle Pruett to no relief. In the present setting, only two need be mentioned specifically.
Pruett's Point Q. is that this Court on direct appeal performed a constitutionally inadequate review of his death sentence. Here we encounter an issue substantially similar to that pending before the Supreme Court of the United States in Harris v. Pulley, 692 F.2d 1189 (9th Cir.1982), cert. granted, ___ U.S. ___, 103 S.Ct. 1425, 75 L.Ed.2d 787 (1983).[4]
*831 While I recognize that the Supreme Court could well prove me wrong, my study of the point reflects no basis for believing that our review of Pruett's sentence has in any way been deficient. I regard the matter at least as clear as it appeared to the Supreme Court of the United States in Maggio v. Williams, ___ U.S. ___, 104 S.Ct. 311, 78 L.Ed.2d 43 (1983).
Pruett's Point S. raises the familiar wolf cry of ineffective assistance of counsel. Specifically, Pruett charges that the alleged ineffectiveness of his trial counsel denied him rights secured by the Sixth and Fourteenth Amendments to the Constitution of the United States. By its very nature, of course, this issue could not at this stage of the proceedings be procedurally barred from consideration on the merits. Read v. State, 430 So.2d 832, 836-42 (Miss. 1983).
I have reviewed Point S. and the factual matters submitted in support thereof to determine whether Pruett has here stated a claim upon which relief may be granted. Compare Callahan v. State, 426 So.2d 801 (Miss. 1983) with Sanders v. State, 440 So.2d 278, 284-85 (Miss. 1983); and Tiller v. State, 440 So.2d 1001, 1006 (Miss. 1983). In my view, even though Pruett may prove everything he has alleged on this point he will have failed as a matter of law to show entitlement to any relief. At trial and on direct appeal[5] Pruett had the benefit of defense counsel more vigorous and competent than I have seen in any other capital murder case to come before this Court.
The effective assistance of trial counsel issue is also presently being rehashed before the Supreme Court of the United States. See Washington v. Strickland, 693 F.2d 1243 (11th Cir. [former 5th Cir., Unit B] 1982), cert. granted ___ U.S. ___, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983); United States v. Cronic, 675 F.2d 1126 (10th Cir.1982), cert. granted ___ U.S. ___, 103 S.Ct. 1182, 75 L.Ed.2d 430 (1983). Quite likely new and more precise guidelines on this troublesome issue will soon emanate from that Court. For the present, it is inconceivable to me that the Washington and Cronic cases will produce any rules which, when applied to the facts of this case (as we glean them from Pruett's present application as well as the trial record before this Court), would require a holding that at his trial Pruett was denied effective assistance of counsel.
In short, I would deny Pruett's points Q. and S. as a matter of law and on their merits, procedural niceties to the contrary notwithstanding.

III.
There is a serious problem with our procedural bar holdings in Wheat, Edwards, Smith, Evans and King that I have heretofore overlooked. This problem exists in the context of the acknowledged popular imperative for the just and efficient administration and enforcement of our capital sentencing system. It arises from our responsibility as the highest court of a sovereign *832 state vested with front line responsibility for the development of criminal constitutional rules designed to implement the Supreme Court's mandate for guided discretion capital sentencing systems. Its urgency is accentuated by growing public dissatisfaction with seemingly interminable delays in death penalty litigation, delays seemingly unrelated to service of the interests of justice.
A review of the error coram nobis applications that have come before this Court, beginning with Wheat, makes clear that they often raise the same issues, over and over. This is particularly true of constitutionally grounded issues surrounding the sentencing phase and appellate review. We fail properly to regard the interests of judicial efficiency when, instead meeting such issues head-on and authoritatively deciding them on their merits (after the full briefing we regularly receive in these matters), we hold them procedurally barred five cases in a row.[6] Particularly is this so when we realize that we will continue to encounter the issue in practically every post-conviction petition until it is decided authoritatively on the merits either in this Court or in the Supreme Court of the United States.
Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), introduced a new era. Bifurcated trials and appellate sentence review were theretofore unheard of in Mississippi  as well as in most other jurisdictions. The seven-and-one-half years since Gregg have produced much "delay" and "confusion". As lawyers know, this often occurs in the years immediately following enunciations of a major new principle of law. See, e.g., the aftermath of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and which I summarized briefly in Walters v. Inexco Oil Co., 440 So.2d 268, 272-74 (Miss. 1983), *833 and more recently the progeny of Moragne v. States Marine Lines, Inc., 398 U.S. 375, 405-408, 90 S.Ct. 1772, 1790-91, 26 L.Ed.2d 339, 359-61 (1970); and State Stove Manufacturing Company v. Hodges, 189 So.2d 113 (Miss. 1966). That process here has been more tedious than usual because human life is on the line, because "death is different". See Hill v. State, 432 So.2d 427, 444-47 (Miss. 1983) (Robertson, J., dissenting).
When this occurs, it becomes our responsibility to assist in fleshing out the new doctrine with deliberately considered holdings in individual cases as they arise. This we and our sister courts must do if the law is ever to become settled. Only when the law has become settled will we begin to make progress toward consistent achievement of the twin ends of finality and justice in death penalty litigation.
Our recent practice of invoking procedural bars in death penalty cases substantially delays the settlement of the law. We substantially put off the day when the post-conviction review of death sentences may begin to be brought to a conclusion within a reasonable period of time. So long as major questions remain unsettled, delay and confusion  and, perhaps even more significantly  seemingly arbitrary inflictions of the death penalty  will remain the order of the day.
In the past year in Wheat, et al., we have allowed our frustration with the magnitude and burden of death penalty adjudications to lead us to shortsightedness. We cut off our noses to spite our faces. We hold an issue procedurally barred five cases running when surely common sense suggests that a carefully considered and authoritative decision on the merits just once would establish a precedent that would greatly facilitate our review of all subsequent cases. If our goal be progress toward consistent achievement of the finality and justice in death penalty litigation, our recently charted course is in need of a substantial mid-voyage correction.

IV.
At the outset, the majority sets forth several cases describing the office of the writ of error coram nobis. We have numerous other cases which articulate the office of this writ in quite different terms. See, e.g., Windom v. State, 192 So.2d 689, 691 (Miss. 1966); Love v. State, 221 So.2d 92, 94-95 (Miss. 1969); Nelson v. Tullos, 323 So.2d 539, 543 (Miss. 1975); Phillips v. State, 421 So.2d 476, 483 (Miss. 1982). In each of these cases this Court has recognized that the writ of error coram nobis is appropriate in case of petitions such as that filed by Marion Albert Pruett. These cases hold that the writ may be used not only to bring to the Court's attention some factual matter not appearing of record but also as this state's post-conviction procedure for allowing collateral attack based upon alleged constitutional defects in the petitioner's conviction or sentence. See King v. Cook, 287 F. Supp. 269, 271-272 (N.D.Miss. 1968).
In a sense, the majority is correct in its restricted view of the office of the writ of error coram nobis. Historically, no one ever dreamt of that writ being used as a post-conviction procedural vehicle for consideration of alleged constitutional infirmities in a prisoner's conviction or sentence. In the courts of other states and in the federal courts, the writ of habeas corpus has been used for this purpose. A decade ago, however, this Court clung to a restrictive construction of the writ of habeas corpus (see, e.g., Keller v. Romero, 303 So.2d 481, 483-84 (Miss. 1974)), and ultimately took the then (historically) dubious step of declaring the writ of error coram nobis as this state's post-conviction form of action for raising constitutional questions regarding a prisoner's conviction or sentence. See Nelson v. Tullos, 323 So.2d 539, 543 (Miss. 1975); see also, King v. Cook, supra.
Forty years ago, in Anderson v. Buchanan, 292 Ky. 810, 168 S.W.2d 48 (1943), the Supreme Court of Kentucky wrote "The writ of coram nobis appears to be the wild ass of the law which the courts cannot control." 292 Ky. at 822, 168 S.W.2d at *834 55.[7] This view of the writ was justifiably held decades before Mississippi began experimenting with it. See King v. Cook, supra. Suffice it to say that, at least among those familiar with the past twenty years' experience under Mississippi's bastardized version of this "wild-ass", the consensus is growing that the writ ought be gelded, if not forever interred. See e.g., Edwards v. Thigpen, 433 So.2d 906, 907 fn. 1 (Miss. 1983).
In this context, I welcome as a breath of fresh air the Attorney General's insistence that this (and presumably all subsequent) post-conviction collateral attack be treated as procedurally commenced under Rule 8.07 of our Uniform Criminal Rules of Circuit Court Practice. I regard our adoption of Rule 8.07 as effecting a coalescence of all post-conviction relief efforts into a single procedure. Edwards v. Thigpen, 433 So.2d 906, 907 fn. 1 (Miss. 1983); Sanders v. State, 440 So.2d 278, 282 fn. 1 (Miss. 1983); Tiller v. State, 440 So.2d 1001 (Miss. 1983). Here, as in civil actions, it simply makes no sense that we have neither more nor less than one form of action. Compare Rule 2, Miss.R.Civ.P.
I would adopt the Attorney General's view that we begin by assuming that this is a proceeding initiated under Rule 8.07 and go from there. In this view the description of the office of the writ of error coram nobis set forth at the outset of the majority opinion becomes irrelevant.

V.
On page 827, the majority opinion, for reasons that wholly escape me, castigates present counsel for Marion Albert Pruett. I take exception to those comments.
Representation of one charged with a capital crime is one of the most serious  and most unpleasant  responsibilities that may be visited upon a member of the bar. When the prisoner has already been convicted and sentenced and that sentence has been affirmed on direct appeal, acceptance of the case by new counsel becomes doubly onerous. They operate under severe time constraints coupled with the certain knowledge that their client's life is on the line.[8] Yet present counsel for Pruett have taken on this burden and have performed it with notable competence and professionalism. Indeed, it is because of the competence with which the matter has been presented by counsel for Pruett that I can be satisfied in my own mind that the vote I cast in this case is a proper one.
It is unfortunate that the majority opinion characterizes Pruett's present counsel as
"Johnny-Come-Latelies" who, in the opinion of this writer, end up causing their client more grief than relief.
(Page 827). The statement becomes all the more anomalous when it is remembered that in at least seven prior Mississippi death penalty cases, which reached the procedural stage Pruett's case is now at, orders were subsequently obtained vacating the death sentence. See Washington v. Watkins, 655 F.2d 1346 (5th Cir.1981); Jordan v. Watkins, 681 F.2d 1067 (5th Cir.1982), clarified sub nom. Jordan v. Thigpen, 688 F.2d 395 (5th Cir.1982); Bell v. Watkins, 692 F.2d 999 (5th Cir.1982); Voyles v. Watkins, 489 F. Supp. 901 (N.D. Miss. 1980); Irving v. Hargett, 518 F. Supp. 1127 (N.D.Miss. 1981); Reddix v. Thigpen, 554 F. Supp. 1212 (S.D.Miss. 1983); Jones v. Thigpen, 555 F. Supp. 870 (S.D.Miss. 1983).
In the context of my certain knowledge of my own responsibilities in this last gasp stage of Pruett's case before the Courts of the State of Mississippi,[9] I am grateful to *835 his present counsel. For one, I am not offended that new points have been raised not presented on direct appeal. Rather, I compliment counsel for the zeal and, again, the professionalism with which the matter has now been presented. Before I vote finally to condemn a fellow child of God to death in the gas chamber, I want to be as certain as is humanly possible that his conviction and sentence are consistent with the Constitution of the United States and with the Constitution and laws of the state of Mississippi. Timid counsel are of no help in this regard.
I would recall the words of Justice Hawkins dissenting in Johnson v. State, 416 So.2d 383 (Miss. 1982):
Each generation of free men owes a debt of gratitude it can never repay to those courageous lawyers in our history who have risked their livelihood, their liberty, and some even their lives in defending an unpopular cause, or an accused charged with a loathsome or heinous offense.
416 So.2d at 396. These words apply to post-conviction counsel as well as trial and appellate counsel.
I regard the representation afforded Marion Albert Pruett by his present counsel  as well as the representation afforded him by trial and appellate counsel  to be within the spirit of these words of Justice Hawkins. In a word, I regard as heroic the performance by all counsel for Pruett at all stages of the proceedings against him. See generally my recent article, The Lawyer as Hero, 53 Miss.L.J. 431 (1983). Lawyers who so serve are deserving of our gratitude.
PATTERSON, C.J., and DAN M. LEE and PRATHER, JJ., join in this opinion.
NOTES
[1] After careful study of the matter while pending on direct appeal, I concluded without serious reservations that Pruett had been convicted and sentenced consistent with the Constitution of the United States and consistent with the Constitution and laws of the State of Mississippi. Accordingly I voted with a majority of the Court to affirm and subsequently to deny rehearing.
[2] My opinion in the Hill case was joined by Chief Justice Patterson. My opinion in Evans was joined by Justices Hawkins and Prather. My opinion in King was joined by Chief Justice Patterson and by Justices Hawkins and Prather. There is, of course, no reason to repeat my previous discourses on this subject. I refer here to my opinions in Hill, Evans and King, and I trust it is apparent that what I have said in those cases has equal application here.
[3] I have analyzed most of our recent cases in my dissenting opinion in Evans, 441 So.2d at 528. That discussion should be deemed incorporated here by reference.
[4] For a summary of the issues pending in Harris, and the application of their pendency to specific cases, compare and contrast Autry v. Estelle, 464 U.S. ___, 104 S.Ct. 20, 78 L.Ed.2d 1 (1983) (White, J., in Chambers) with Maggio v. Williams, ___ U.S. ___, 104 S.Ct. 311, 78 L.Ed.2d 43 (1983); see also, Balmer, The Question of Proportionality, 70 A.B.A.Journ. 54 (1984).
[5] On direct appeal Pruett's former counsel assigned only four errors while on the instant application new counsel have raised nineteen points. This in no way suggests inadequacy of counsel on direct appeal. It is a tried and proven effective appellate tactic to concentrate on a small number of "strong" issues. Successful appellate counsel routinely eschew assignment of a plethora of errors. They wish to avoid deflecting the Court's attention from the appellant's strong points. Common sense informs appellate counsel that assertion of frivolous points may undercut one's credibility on the point or two that may have merit.

Pruett's counsel on direct appeal chose to concentrate on the issues of jurisdiction and a juror's alleged violation of his oath. Clearly, these were Pruett's strongest points. They were competently briefed and forcefully argued. On the latter point, Pruett even picked up two dissenting votes. Pruett v. State, supra, 431 So.2d at 1110-1111. Assuming a constitutional right to effective counsel on direct appeal, I regard that Pruett has enjoyed that right.
As I have said elsewhere, I appreciate present counsel's competence and thoroughness in bringing to our attention fifteen new points. I regard this view as wholly consistent with the proposition that Pruett had effective assistance of counsel on direct appeal.
[6] To illustrate the point stated above, consider the following:

(a) Pruett's Point M urges that improper jury instructions were given at the sentencing phase of his trial. The majority refuses to address the merits of the claim on grounds that it is procedurally barred. In at least four of our 1983 post-conviction death penalty decisions, we have been presented with similar, if not legally identical, arguments that improper jury instructions were given at the sentencing phase of a capital murder trial. Today, for the fifth consecutive time, we hold consideration of the merits of this issue barred by the petitioner's procedural defaults either at trial or on direct appeal. See Wheat v. Thigpen, supra, 431 So.2d at 488; Edwards v. Thigpen, supra, 433 So.2d at 908; In Re Evans, supra, 441 So.2d at 522; King v. Thigpen, supra, 441 So.2d at 1371. We know that there are dozens of capital murder cases yet to be heard in this Court, in each of which if affirmed on direct appeal we may be certain that post-conviction proceedings will be brought. We know that in a substantial number of these the very same issues regarding jury instructions at the sentencing phase will be raised. To me, it seems appropriate and efficient that we consider and decide the issue on its merits.
(b) Pruett's Point N urges that improper closing arguments were given at the sentencing phase of his trial. The majority refuses to address the merits of the claim on the grounds that it is procedurally barred. In at least four of our 1983 post-conviction death penalty decisions, we have been presented with similar, if not legally identical, arguments. Today, again, for the fifth consecutive time, we hold consideration of the merits of this issue barred by the petitioner's procedural defaults either at trial or on direct appeal. See Wheat v. Thigpen, supra, 431 So.2d at 488; Edwards v. Thigpen, supra, 433 So.2d at 908; Smith v. State, supra, 434 So.2d at 216; King v. Thigpen, supra, 441 So.2d 1365. Again it would seem appropriate and efficient to consider and decide the issue on its merits.
(c) Pruett's Point P urges failure to require an adequate pre-sentence report during the sentencing phase of his trial. Again, the majority refuses to address the merits of the claim on grounds that it is procedurally barred. In at least two of our 1983 post-conviction death penalty decisions, we have been presented with similar, if not legally identical, arguments regarding the alleged failure to require an adequate pre-sentence report during the sentencing phase of a capital murder trial. Today, for the third time, we hold consideration of the merits of this issue barred by the petitioner's procedural defaults either at trial or on direct appeal. See Smith v. State, supra, 434 So.2d at 217-218; and In re Evans, supra, 441 So.2d at 523.
(d) Pruett's Point Q urges alleged inadequate appellate review of the death sentence imposed upon him. Today, for the fourth time within the past year, we hold consideration of the merits of this issue barred by the petitioner's procedural defaults either at trial or on direct appeal. See Smith v. State, supra, 434 So.2d at 218; In re Evans, supra, 441 So.2d at 523.
[7] The Kentucky Court's view receives information elaboration in McPherson, Coram Nobis: The Wild Ass of the Law, 11 Loyola L.Rev. 100 (1962).
[8] The only persons who would question the substantiality of these pressures  which are unlike any other a lawyer encounters  are those who have never experienced them.
[9] I am well aware of the probability that Pruett will seek relief in the courts of the United States via federal habeas corpus. 28 U.S.C. § 2254. As I have urged elsewhere, however, I insist that it is our responsibility to decide these cases as a true court of last resort, as though there were no other court, and as though, if we affirmed, the sentence of death would surely be executed.